GOLDSMITH *vs.* WHITE.

1. When land is described in a deed by metes and bounds, evidence is admissible to show that certain land in controversy is not included within such description.

2. The construction of a deed is for the court.   In construing the desscription he is not limited to an exact direction of lines, but may construe the entire description together, including the *termini* of the lines, so as to reach a consistent and reasonable construction of the grantor's meaning.

(*a*.) A deed contained the following as part of the descriptive portion thereof: " Commencing at Anderson's corner, near Dean's mill pond, and running north to where the fence now stands until it strikes near the creek, within distance sufficient to set a fence following the creek ; but reserving, however, the land on said east side as far as the back water shall cover from said Dean's mill pond until the line reaches the ford of said creek : "

*Held*, that the intention of the grantor was clearly to convey land only on the east side of the creek, and not that the line should cross the creek.

3. Under the above description the line did not run from Anderson's corner directly to the northwest corner of the field and thence to the ford, but to the southwest corner—the fence referred to being that on the east side of the creek.

Deeds.   Title.   Charge of Court.   Evidence.   Before Judge HILLYER.   Dekalb Superior Court.   September Term, 1881.

Goldsmith brought ejectment against White for certain land.   The controversy arose thus: In 1850 Lemuel Dean was the owner of a large part of land lot No. 254, in Dekalb county.   Across this lot ran from northeast to southwest Snapfinger Creek, and towards the southwest part of the lot was the mill-pond, which extended in a general southwesterly direction.   In 1850 Dean conveyed a lot to Wood, the description being as follows: " The east part of lot No. 254, with the following boundaries: commencing at Anderson's corner, near Dean's mill-pond, and running north to where the fence now stands, until

it strikes near the creek within distance sufficient to set a fence following the creek, but reserving, however, the land on said east side as far as the back-water shall cover from said Dean's mill-pond, until the line reaches the ford of said creek. The east bank being the line up to Eskew's land," etc. Wood conveyed to Mosely, and Goldsmith claimed under this deed by a regular chain of title.

The dispute arises out of a construction of this deed. To begin at Anderson's corner, which was located south of the upper part of the pond, and run due north, the line would not touch any fence at all on the east side of the mill-pond or creek; but if it were continued due north across the mill-pond, it would strike an old fence line on the west side of the pond and running up the creek towards the ford. On the other hand, if, instead of running due north, the line from Anderson's corner were run a little northeast, it would strike the southwest corner of the fence enclosing what was known as "the Scott field," and from that point the fence would run nearly north to a point near the creek, which was the northwest corner of the Scott field. To run the line in this way would leave a parcel of land lying between it and the pond and creek, while to run directly north across the pond from the Anderson corner would include this tract. This piece of land which would be so left was conveyed by Dean to Murphy in 1855, and came from him to White by regular chain of title. There was conflicting evidence as to where the different owners claimed their boundary lines to be, and as to the exercise of acts of ownership, such as the splitting of rails, keeping up the fence line of the Scott field, etc.

The jury found for defendant. Plaintiff moved for a new trial on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court allowed Wood to testify as follows: "The line of the land I sold Mosely began at Anderson's corner, as shown by plat, ran a northerly direc-

tion to the Scott field, at the southwest corner, thence along said fence north to a distance sufficient from said field and pond to set a fence, thence along the fence to the old ford." Other witnesses gave similar testimony. In each case it was objected to on the ground that it conflicted with the deed.

(3.) Because the court erred in that part of his charge to the jury in which he instructed them that by the terms of the deed from Wood to Mosely, the land in dispute was not conveyed to Mosely. That by the terms of said deed the fence therein mentioned had reference to what was shown on the plat as the Scott field, it being conceded this was the only fence on the east side, and by its terms it could have no reference to a fence on the opposite side of the creek or pond from the Anderson corner. That the description in said deed called for a fence on the east side of the creek; that the jury in determining the line of the land called for by the deed from Wood to Mosely were not confined to a line running in a north course from the Anderson corner, but would under said deed be required to confine themselves to a line running in a general northerly direction to a point within distance sufficient from said creek above high-water mark to set a fence, thence along the fence on the east side of the creek to the old ford.

(4.) Because the court refused, upon request of plaintiff's counsel, to instruct the jury that if the fence around the Scott field was the one referred to in the deed from Wood to Mosely, and the fence called for by said deed, that the terms of the deed would require and call for a direct line from the Anderson corner to that part of the fence being nearest to the creek or head of said pond, to-wit, the northwest corner of said Scott field, and in charging that said deed called for a line from Anderson's corner to the nearest point of said field, to-wit, the southwest corner, thence north along said fence of Scott field to high-water mark, thence along the fence to the old ford.

The motion was overruled, and plaintiff excepted.

L. J. WINN, for plaintiff in error.

CANDLER & THOMSON, for defendant.

CRAWFORD, Justice.

The plaintiff in error brought this suit against the defendant in error to recover fifteen acres of land, more or less, off of land lot number 254, in Dekalb county. The jury, under the charge of the court and the evidence, found against him, and he made a motion for a new trial, which the court refused, and he excepted.

Both parties claim under one deed, and the dispute arises upon the following description contained in the original deed: " Commencing at Anderson's corner, near Dean's mill pond, and running north to where the fence now stands until it strikes near the creek, within distance sufficient to set a fence following the creek. But reserving, however, the land on said east side as far as the back water shall cover from said Dean's mill pond, until the line reaches the ford of said creek."

It is claimed by the plaintiff in the suit that there were two fences, one on the east, the other on the west side of this pond, and that the real line was to run across the pond directly north, until it struck the fence on the west side; and by the defendant, that the line was to run to the fence on the east side which was only east of north from the beginning corner.

Much testimony was introduced to explain the location of these fences and fields, and exactly where the line ran according to the fact and the deed.

1. It is insisted that the court erred in permitting certain witnesses to testify in reference to this line, because their testimony was at variance with the description set out in the deeds.

The record discloses the fact, that the land in dispute

was conveyed by deed, and described therein by metes and bounds. The conveyance was made more than thirty years before the trial, and there was no error in allowing evidence to be introduced to show where the points named in the deed were, and that the particular plat or tract of land in dispute was not covered by or included within the boundaries named. 57 *Ga.*, 113 ; 49 *Id.*, 99 ; 20 *Id.*, 689.

2. It is further alleged as a ground for a new trial that the judge erred in charging the jury that the legal effect of the deed from Wood to Mosely was not to convey the disputed land to the latter. The construction of this deed was matter for the court ; and as by the description of the land it called for a fence on the east side of the creek, it could by no possibility refer to a fence on the west side. Besides, such a construction as claimed by the plaintiff would defeat the whole object of the grantor in protecting the east side of the creek, that he might thereby protect his pond and thus secure its benefits to the land reserved, and never intended to have been included in the conveyance. The very words of the deed were, that the line was to run only where the fence stood, "until it strikes near the creek," and it nowhere says across, or even to the creek, but near the creek.

The construction which the court gave to the deed was the only fair one which could have been given consistent with itself. It is true that if nothing else except the direction had been given, that would have been absolutely controlling and must have carried the line where the plaintiff claims that it was intented to have gone, that is north, but the whole description of the line must be taken together.

3. The plaintiff in error alleges that the judge improperly instructed the jury, even if the fence on the east side of the creek were the fence referred to, because the line of the fence which should have been considered, was that part of the same being the nearest to the creek, and was the northwest instead of the southwest corner. If that con-

struction had been given to the deed, the whole line of fence from the southwest to the northwest corner where it stood at the making of the deed would have been ignored, and there would have been no need of reference to it at all, except to say that the line should run from the Anderson corner direct to the northwest corner of this field and thence to the ford.

In looking through the whole case, we find no error of law committed by the judge, and are of opinion that the evidence fully supports the verdict.

Judgment affirmed.