THE SOUTHERN MARBLE COMPANY *v.* DARNELL.

1. The measure of damages for injury to a mill-site, occasioned by diverting therefrom at a point above the owner's land, by means of a permanent ditch, the water or a part of the water in a stream which would otherwise have reached the mill-site and might have been used as a part of the available water-power, is either the

difference in the value of the land without the diverted water and its value with that water, or the like difference as to the value of the mill-site itself, the owner being entitled to recover one or the other of these differences at his election. No mill ever having been actually erected, nor anything done preparatory to its erection, the intention of the owner at the time the diversion of the water took place, or at a previous or subsequent time, to erect a mill on the site in question, would make no difference as to measuring his damages. The anticipated profits of a mill which never existed could not be recovered.

2. The like measure of damages would apply to an ochre or manganese mine, or mines, never opened or worked or put in a state of preparation for applying the water to them.

3. If the owner consented to the construction of the ditch or canal knowing the purpose of the same, he could not afterwards complain of the result as an injury to him or his premises. His consent might be inferred from his aiding as an employee in surveying and locating the route of the ditch and accepting compensation for his labor, unless he actually objected and made his objection known in due time.

4. If the owner stood by while the ditch or canal was being constructed at a heavy expense, and made no objection and took no steps to prevent the work or its consequences, until after completion, he would be estopped from afterwards obtaining an injunction against the use of the ditch or the continuous diversion of the water by means of the same.

July 30, 1894.

Equitable petition. Before Judge GOBER. Pickens superior court. September term, 1893.

The petition of Manson Darnell alleged: Upon plaintiff's land flow two streams of water, known as Barnett creek and Dock creek. On one of them is a valuable water power of the height of about 25 feet, over which the creek flows, and to utilize which plaintiff intended to erect a mill for grinding grain for profit, said water power being sufficient, with the natural and ordinary flow of water in the creek, to propel the machinery of the mill or other ordinary machinery usually propelled by water. Plaintiff's home and farm are on this land, and he conducts farming operations thereon; and said streams are very valuable in furnishing to the farm and

its uses, at all times when undisturbed and in their natural flow, an adequate supply of water. The land contains valuable mineral deposits, and the streams are indispensably necessary to the development and mining of said minerals; and in the event plaintiff should at. any time desire to enter upon such development and mining, it would be necessary to divert said streams or some portion thereof for that purpose, and the volume of the same in their natural flow would be entirely sufficient for such operations. Defendant, a corporation of this State, doing the business of quarrying marble in the immediate neighborhood of said land, has diverted said streams from their natural and usual channels, and has conveyed the waters of the same off and away from plaintiff's land, by means of aqueducts, pipes, ditches,. dams and other means, thereby absolutely depriving plaintiff of the uses and benefits of the waters of said streams; has disregarded defendant's notice to desist. from such unlawful diversion, and has continued the same for the past two years. If defendant be permitted further to continue such diversion, the land of plaintiff will necessarily be irreparably depreciated in value; his farm will be seriously damaged, and his water power on which he intended to erect the mill will be totally destroyed and made worthless, and the various uses and benefits accruing to him by the free and undisturbed possession and enjoyment of said streams will be largely impaired. Defendant is using said waters on its prop- erty in quarrying and cutting marble for profit, without. the permission of or the slightest compensation to plaintiff, who, by these means, has been damaged $5,000. He prays, that defendant be commanded by injunction to desist absolutely from the diversion of the streams from their natural and usual channels, and from interfering in any way with their course or condition. By amend- ment he alleges, that while he has claimed damages in

a sum mentioned, such damages are irreparable if defendant be permitted to continue the acts complained of; that his farm as such, and with reference solely to the use of the same for agricultural purposes, has been damaged $1,000 by the acts complained of; that by the diversion of the water from his land, and the diminution of the supply to which he is justly entitled, he has been damaged $500 as to his cattle, horses and other stock; that his contemplated mill property has been damaged $1,000; that with the ordinary and natural flow of water in the stream on which said water power is situated, the contemplated mill could have been profitably erected and operated, and other machinery usually propelled by water, for threshing grain, ginning cotton, etc., could have been successfully and profitably utilized on and by said water power, but for the unlawful acts of defendant in the diversion and diminution of the water supply; that by said acts the mineral interest, consisting of valuable deposits of manganese and ochre, has been damaged $2,000; that by being denied the free and undisturbed use of the supply of water natually belonging to and running in said streams, complainant has been unable to complete negotiations for the leasing of these mineral deposits to solvent and responsible parties, and such negotiations were actually in progress, and were terminated by such parties because of the diversion and diminution of the water supply by defendant; and that in the use of water from said streams, of which plaintiff has been deprived by the acts of defendant, for culinary and other household purposes, he has been damaged $500; for all of which several sums he prays judgment. He further alleges, that at the time of the diversion of the streams flowing over his land, he was the owner and in actual possession of the same; that one of the streams runs within less than fifty feet of his residence; that these streams flow in a southerly direc-

tion, their source being in a northerly direction from his land and residence; that at a point on said streams about 400 yards from his land, the ditch by means of which the water is diverted has been cut for a distance of nearly five miles, running in a westerly direction, taking up and diverting all the streams flowing in a southerly direction and which the ditch crosses, the purpose being to discharge the water of said streams into a reservoir at the western turning of the ditch, and thence to the mill and quarries of defendant, in the operation of which mill and quarries the water is used, etc.

There was a demurrer to the petition, which was sustained as to the allegations relating to diminution of water for stock, culinary and domestic purposes, and agricultural purposes; but overruled in other respects, and defendant excepted. In its answer it denies that it has damaged plaintiff in any way; or that it has so diverted water as to deprive plaintiff of an abundant supply for his stock, or for any ordinary domestic or agricultural purpose; or that with the full, ordinary and natural flow of water there would be a sufficient supply to afford plaintiff such power as to enable him to erect and profitably conduct a mill; or that there are mineral deposits of value on his land, the profitable working of which is or has been prevented by a diversion of water by defendant, or that the natural and ordinary flow of water would be sufficient for the profitable working of said minerals. Defendant further pleads, that it acquired a perfect legal right to construct the water-way complained of. One of its lateral ditches does divert a small amount of water which by its natural course would flow into Dock and Barnett creeks, but plaintiff is not in any manner injured thereby. The points of diversion are near the heads of the streams, and the amount of water diverted from the streams by the ditch is very small, so small as not perceptibly to

lessen the volume of water in the streams when they reach plaintiff's land. These streams are made up or supplied by numerous springs along their course, the greater number of which are at points below the ditch. When the streams reach plaintiff's land, they contain a sufficient quantity of water to furnish an adequate supply daily for 50,000 head of cattle, a much larger herd than will probably ever be pastured on said land by plaintiff, his heirs or assigns. It is not practicable, with or without the water diverted by the ditch, to erect a mill at plaintiff's alleged mill-site (which defendant has had examined) that can be successfully and profitably operated. The alleged damage to said mill-site, if any has been sustained, is too remote and speculative to be recovered. Defendant cut the ditch more than two years ago, and has continued from that time to use it; it was constructed at much labor, expense and time, and is of much value to defendant. Long before it was dug, plaintiff was fully aware of defendant's purpose. He actually took part in the survey for the ditch, was employed by defendant to assist in its construction, did assist in the work, and was paid for his services by defendant. Wherefore he is estopped from urging that he has been damaged by it; but if not estopped, he has, by his long acquiescence and laches, deprived himself of the right to equitable relief by injunction.

The jury found for the plaintiff $100 as damages, and that defendant be perpetually enjoined as prayed. Defendant's motion for a new trial was overruled. The motion alleges that the verdict is contrary to law and evidence, and contains the following special grounds:

To plaintiff's testimony of his intention to erect a mill, defendant objected on the ground that such proof would be irrelevant and immaterial, and because a recovery on account of such intention would be of a future, speculative and remote nature. Upon this objection the

court made the following ruling, which is assigned as error : " My idea is, that he would have a right to show that he had an intention and ability to erect a mill, and has a right to show what was the value for rent of such a mill as he had the ability and intended to erect, for the time he was deprived of it by the act of the defendant, if he was deprived. I mean by value for rent the profit for hire; you can take into consideration what it would cost, and the profit that would be in it for rent during the time he was deprived of it, taking into consideration the amount of cost and all. Of course, the capital he put into it would be taken into consideration. It is the profit for rent during the time he was deprived of it."

Plaintiff testified, in relation to damage by diversion of the streams from his mineral land : " We have got some manganese and ochre property, and we got an option at one time to certain property to McConkey and Ely. Them two parties come to me and Mr. Padgett and wanted a showing on our property there, and we give them a showing, and the time come on for them to pay for it, and they told me the money was ready if we put the water back there,—the water the Southern Marble Company took from me. Me and Mr. Padgett were to get sixteen hundred dollars. Mr. Padgett had a half-interest in the minerals. They told us both that the money was ready if we would put the water back there, that they had no use for it without the water." To this testimony defendant objected, on the ground that plaintiff could only show how much he had been damaged by being deprived of the water that he could have used in the development of the mineral property; that the option did not indicate in any manner the value of the property; that such projected sale did not indicate the value of the property prior to bringing the suit: and that the sayings of these other parties were not admis-

sible. The court ruled, that the giving of the option would be immaterial, and that plaintiff would have a right to show any damage, not prospective, accruing to him. Also: "You are here asking for an injunction to restrain these people from diverting this water. If you get the relief you seek, you would have your mineral property and your water on it. You have the right to show what you could have sold this property for, as one of the means of determining its worth or value. You have no right to show what anybody said about it. It is a fact, though, if you can sell it, that you have a right to show. Upon the question as to what it would be worth per year, you have a right to show it. You can show, if you can, what you could have sold it for, by way of showing the worth of the property; and then the question would come up as to its annual worth. The measure of damages would be its annual value, that is, for the time he was deprived of the use of this water. The presumption is, if it was worth eight hundred dollars, it is worth that now, if you get the water back. That is the gist of your case—that you were damaged by taking this water off. If you were, you must show it to the jury during this time—prior to the filing of the suit." Plaintiff testified, under this ruling, that they could have sold that property for $1,600 but for this interference with the water; that he did not know exactly what he could have made out of it, but he thought it would have been worth $300 a year. Defendant further objected, that the law establishes the rental or annual value of the property; and that the testimony gave the opinion of the witness as to what the rental value of the property would be for mineral purposes, when it was not shown that he was an expert. On these objections the court ruled: "I do not think that it would necessarily follow, because he could have sold the land for a certain value, that it would be worth so much per

year. If he has been in charge of the property and knows all the facts and circumstances connected with it—if he knows what he could realize out of it for rent or lease, I think he would have a right to state it." Upon the foregoing rulings errors are assigned, and a similar assignment is made on the following testimony of Padgett, touching which the court made like rulings : "We had a contract with McConkey and Ely, if it proved to be good they would take it. They worked down on my brother's farm. They would take the mineral interest. It was iron and manganese and ochre. They called it manganiferous ore. They went on and worked on my brother's below us, and I sorter opened ours. They took an option on ours at $1,600. Plaintiff and I each had a half-interest in the property. We sold it for $1,600,—that was the contract. That was a little before the ditch was cut. They came and told us they would take the property, but the water was cut off, and they went and worked some on the same land. Taking the water off into that ditch to the marble works prevented the sale."

The court charged: "The owner of land is entitled to the free and exclusive enjoyment of all water-courses not navigable flowing over his land, and the diverting of a stream wholly or in part from the same, or the obstructing thereof so as to impede its course or cause it to overflow or injure his land or any right appurtenant thereto, or the adulterating thereof so as to interfere with its value to him, is a trespass upon his property." Assigned as error, because the facts of the case do not constitute a trespass on plaintiff's property, and the principle of law stated should not have been emphasized.

The court gave in charge sections 742 and 744 of the code, adding : "In this connection I charge you, whether or not this proceeding in cutting this ditch, if this plaintiff Mr. Darnell was not notified and gave no consent

to a diversion of this water, even if it was diverted from a point before it reached his land, he would not be bound by any proceedings of that kind. It would not affect him unless it has been shown to you that, in the damages which accrued to him, he was a party to it and was bound by it." Assigned as error, because of the following facts : In argument counsel for plaintiff insisted that defendant had robbed the plaintiff of his property, etc.; in reply to which counsel for defendant orally requested a charge to the effect that defendant as a mining corporation could, under the law, divert water from its natural course by a ditch across the lands of another, and that the jury would be authorized to presume that defendant acquired a legal right to cut the ditch. The charge given was not equivalent to the charge orally requested ; on the contrary the last clause is a practical refusal of the request. It was error to refuse to charge upon the subject of presumption, as requested. The last clause was also error, because the evidence shows that plaintiff assisted in surveying the ditch, was paid for that service by defendant, and stood by and saw the work of construction go on without objecting to it; and he is therefore estopped from denying that defendant had the right to cut the ditch.—To this ground the court appends this note : "Counsel asked court to charge sections in this ground set out. Counsel argued to jury that the presumption was, the defendant had the authority to do what it had done, and that the presumption was its acts were lawful acts and not unlawful acts. Counsel may have asked orally court to charge as to presumptions. As to this I cannot say."

The court charged: "The plaintiff alleges that the water has been diverted so that it is not returned to its natural channel to pass over the plaintiff's land, but is diverted therefrom. He alleges different ways in which he has been damaged. He says that these damages are

irreparable, and that for these reasons, on the evidence in the case, the defendant ought to be enjoined from the further and continued diversion of the water as he insists. As to what the truth of the case is, it is for you to say from the evidence. The burden is upon the plaintiff to make out his case by the preponderance of the evidence. If you believe from the evidence that the defendant diverted the water as charged, in such a way as to take it from its natural channel, not returning it, and that after taking it from a point on the stream above plaintiff's land, so conducted the water that it was not returned to its natural channel, and it did not flow in its natural channel through plaintiff's land, upon such a state of facts, if no reason appeared to the contrary, and the case is in other respects made out, the plaintiff would have a cause of action against the defendant, and he would be entitled to a verdict for nominal damages for the invasion of his right to have the water flow through the land in its natural channel. If the defendant diverted the water as charged, either wholly or in part, so as to prevent it either wholly or in part flowing in its natural channel through the lands of the plaintiff, and by reason of this the plaintiff was damaged, and you further believe from the evidence that such damages are irreparable and continue to be, that is, the damages caused by such diversion, then, in such case, if no reason appears to the contrary, and the case is in all respects made out to the satisfaction of the jury, the plaintiff would be entitled to a perpetual injunction enjoining the defendant from diverting the water, if such is the fact. The defendant insists that the plaintiff is estopped from seeking an injunction against it, for the reason that the plaintiff stood by and saw it spend its money and build its ditch and works and go to great expense, that the plaintiff helped to construct the ditch, and that such time has elapsed, and that for these reasons, along

v 94-16

with others, would bar the plaintiff of his right to an injunction, if he ever had such right. The injunction asked by the plaintiff is asked as an equitable right. A man who would have equity must do equity—that he himself has acted properly about the matter in controversy. He must not, by word or deed, have led the opposite party into the position about which he complains, must have been diligent and not guilty of any laches in the asserting of his rights." Error, because: (1) Plaintiff does not allege in his pleadings that his damages are irreparable; but on the contrary alleges his damage in a specific sum, and prays judgment therefor. (2) This charge enumerates and repeats the facts alleged by plaintiff, and instructs the jury that they are sufficient, if no reason to the contrary appears, to authorize a verdict for the plaintiff, and then proceeds to state the contrary reason insisted upon by defendant, but omits to instruct the jury that such reason, if it exists, would be sufficient to estop the plaintiff, but on the contrary instructs the jury that the plaintiff must by word or deed have led the defendant to do that of which he complains, before he can be estopped.

The court charged: "The plaintiff insists that he is entitled to special damages. He insists that the water was diverted from a place where he intended and had the ability to build a mill; that he was prevented from building the mill, for the reason that the water was diverted therefrom, and that he had not sufficient left to run the mill. The burden would be upon the plaintiff to show that he is entitled to the special damages claimed. The burden would be upon the plaintiff to show that he intended to build the mill and had the ability to build it, in so far as he had money or resources to build it. Again, he would have to show the profit of such a mill during the time he was deprived of the use of it, prior to the time of filing this suit, taking into consideration

the cost of the erection of the mill and all of the expenses incurred on the account and in the running of it. If the plaintiff has shown to your satisfaction that he intended and had the ability to build such a mill and was frustrated by the diversion of the water, and that there was a certain profit from the rent of it, making allowance for and taking into consideration the expenses of erection and all other expenses, and after deducting for these, then in such event you would find for the plaintiff whatever special damages he has lost by the act of the defendant in this way, under this rule, up to the time of the filing of this suit." Error, because the damages which the jury are thus authorized to find are speculative and remote.

The court charged: " So the plaintiff says he is entitled to special damages for the diversion of the water in connection with certain mineral interests. As to what the facts are, it is for you to say. I charge that he would be entitled to recover whatever special damages he has shown he has suffered in this connection. The measure would not be the value of the property, but it would be whatever profit he has shown he has lost on account of his inability to work such mineral property on account of the diversion of the water, and which would have accrued to him if he had had the water and had worked it; not prospective damages, but such as have been shown would have accrued to him had not the defendant deprived him of the water necessary to work them, if such is the fact. Now, it would be on the plaintiff to show all these things. If there was sufficient water left for the purpose of working them, or if he has not shown what the profit would be, or the jury should believe from the evidence that there would have been no profit in working them, or if the jury should believe that the diversion of the water has not caused the plaintiff any damage, then in such event the

jury could not find any special damages on this point for the plaintiff." Error, for the reason stated in the last ground.

Errors in refusing to charge the following as requested:

(*a*) "A diversion of water will not be restrained by injunction, where there is ample water left for the plaintiff's needs." (*b*) "A court will not consider an application for mandatory injunction, where the plaintiff has been guilty of delay in asking its aid. It will not undo what the plaintiff might have prevented by filing his bill promptly." (*c*) "Where special damages are claimed, the proof thereof must be specific; and it is incumbent upon plaintiff to make such proof." (*d*) "If plaintiff had notice of the intention of defendant to divert the water in question, before the digging of the ditch, and did not apply for an injunction until after the ditch had been dug and defendant had incurred great expense in connection therewith and with the use of the water, he will not be entitled to an injunction. More especially would this be true if plaintiff participated in digging the ditch or in the survey therefor, knowing the purpose of such survey, and did not warn defendant to desist." (*e*) "If the plaintiff is not estopped as above stated, still in order to entitle him to an injunction he must show that defendant has diverted the water without right and is insolvent, or that it has diverted the water without right and the damage to plaintiff cannot be measured in money." (*f*) "Before plaintiff can recover for damage done to his mineral interests by the diversion of the water, he must show what such damage was. It is incumbent on him to show that he cannot, since the diversion of the water, develop and work such minerals as profitably as he could have done without such diversion. He must further show that he was able to and would have developed or worked such minerals, and what loss in profits therefrom he has sustained by reason

of such diversion. The measure of his damages would be, in such case, not the value of the mineral interest, but what would be his yearly loss of profits because of such diversion. In connection with this, the jury would' have the right to consider what the expense of working or developing of the mineral would have been."

HARRISON & PEEPLES, for plaintiff in error.
S. A. DARNELL, contra.

SIMMONS, Justice.

Darnell filed his equitable petition against the Southern Marble Company, alleging that he was the owner of certain lots of land upon which was situated a valuable mill-site, where he had intended to erect a mill, and that on another lot there were valuable mineral deposits of ochre; that two streams flowed through these lots, supplying sufficient water to run the mill and work the mine; that the defendant had cut a certain ditch five miles in length, whereby a portion of the water which naturally flowed through his land was diverted, thus causing damage to his mill-site and mine. He prayed for damages and an injunction. The jury, under the charge of the court, returned a verdict for the plaintiff for damages, and decreed a perpetual injunction. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. Several grounds of the motion for a new trial complain of rulings of the judge allowing evidence to be introduced showing the profits which the plaintiff could have made if he had erected the mill, the rent of the mill, etc., and of certain charges of the judge upon this theory of the case and on the measure of damages, all of which will be found, in the official report. As there is to be a new trial, we will lay down a general rule which we think ought to control the case. We think where a person goes upon a stream above the land of

another, and diverts part of the water from his lands by means of a permanent ditch, which water would naturally have flowed upon his lands to the mill-site, and which might have been used as a part of the water to operate the mill if one had been erected there, the proper measure of damages in such a case would either be the difference in the value of the land without the diverted water and its value with that water running to the mill-site, or the like difference as to the value of the mill-site itself. The owner would be entitled to recover one or the other of these differences at his election. Inasmuch as the owner had not erected a mill upon the site, nor done anything preparatory to its erection, his intention at the time the water was diverted, or at a previous or subsequent time, to erect a mill on the site in question, would make no difference as to the measure of damages. No mill having been erected, the anticipated profits arising from the running of a mill could not be recovered, and proof as to the probable extent of such profits was inadmissible. The charge of the court as to the recovery of such profits was error.

2. The like measure of damages would apply to the ochre or manganese mine, the same never having been opened or worked or put in a state of preparation for applying the water to it.

3, 4. It was contended on the part of defendant that the plaintiff is estopped from claiming damages, because when the ditch was being dug, he knew the purpose for which it was intended, and not only stood by and saw the work going on, but was actually employed by the defendant to assist in digging the ditch and was paid for this service. If this be true, we think the plaintiff could not afterwards complain that the ditch diverted water from his premises. It would be inequitable and unjust to allow him to recover damages for an injury resulting from this cause. He could not stand by while

the ditch was being constructed at a heavy expense, or aid in the digging of the ditch, receiving compensation therefor and making no objection, and then recover damages for the diversion of the water from his premises, when he knew or ought to have known that this would be the result of the construction of the ditch. Under these facts, he would be estopped from obtaining an injunction against the use of the ditch and the continuous diversion of water thereby.    *Judgment reversed.*