## VANDIVER v. BYRD-MATTHEWS LUMBER COMPANY
### et al.

1. An owner of land conveyed by deed "all the timber of whatever kind and description now growing or being upon [a described lot of land], with the right to cut down said timber at any time and to remove the same in any manner whatsoever, so long as no damage is done to growing crops. The right to use any and all watercourses on the property for floating, moving, or working up said timber is also hereby conveyed to [the grantee] and his assigns; also the right to erect splash or other dams. Timber for firewood or keeping up the farm property occupied by [the grantor] is reserved by him; but such reservation does not carry the right to take timber off the property." The subject-matter of the grant is timber, and includes all trees standing on the land that are suitable, at the time of the grant, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes, and does not embrace sprouts and small saplings.

2. There was no abuse of discretion in refusing to enjoin the construction and operation of the tramroad on the terms of the interlocutory order.

NOVEMBER 16, 1916.

Petition for injunction. Before Judge Jones. White superior court. April 15, 1916.

M. L. Vandiver was the owner and in possession of land lot No. 2 in the sixth district of White county, except thirty acres which he had theretofore conveyed to Jonathan Allison. On January 19, 1894, he conveyed by deed to John Martin, "his heirs and assigns, all the timber of whatever kind and description now growing or being upon lot of land No. 2 in the sixth district of said White county, except thirty acres, more or less, deeded by M. L. Vandiver to Jonathan Allison, the full lot containing 490 acres, more or less, with the right to cut down said timber at any time and to remove the same in any manner whatsoever, so long as no damage is done to growing crops. The right to use any and all watercourses on the property for floating, moving, or working up said timber is also hereby conveyed to said John Martin and his assigns; also the right to erect splash or other dams. Timber for firewood or keeping up the farm property occupied by said M. L. Vandiver is reserved by him; but such reservation does not carry the right to take timber off the property. To have and to hold said timber and appurtenances unto the said John Martin, his heirs, executors, administrators, and assigns, in fee simple." By mesne conveyances the property and rights conveyed to John Mar-

8

tin by virtue of the foregoing deed passed to and vested in the Byrd-Matthews Lumber Company. Subsequently S. R. Vandiver purchased the south half of lot No. 2, subject to the prior deed from M. L. Vandiver to John Martin. The Byrd-Matthews Lumber Company also owned the timber on a large area of land in the vicinity of lot No. 2 of the sixth district of White county. This corporation was extending its tramroad through lot No. 2 of the sixth district, with a view of reaching timber on other lots and hauling the same to its mill. The defendants (the corporation and its superintendent) declared their purpose to cut all the timber on lot No. 2 in the sixth district which was suitable for timber and to haul it over their tramroad to their mill. While engaged in constructing their tramroad over lot No. 2, and before they had entirely crossed the south half of the lot, S. R. Vandiver filed his petition to enjoin them from cutting and removing any trees which would not fall within the designation of timber at the date of the deed from M. L. Vandiver to John Martin; from cutting any of the timber until it was ascertained by the court exactly what timber was embraced within that deed, and the same so marked as to prevent any possible confusion; and from further trespassing in any wise upon the land. On a rule to show cause the defendants insisted that the conveyance from M. L. Vandiver to John Martin conveyed all the trees of every description, save only such as were reserved for fuel and farm purposes, and that under the facts averred in their answer the plaintiff was estopped from denying to the defendants the right to construct a tramroad over lot No. 2 for the purpose of transporting over it not only timber from this lot but from other lots in the vicinity. The case was heard with another case involving the same issues; and the court rendered the following judgment: "It is the judgment of the court that the defendants own all of the timber of whatever kind and description that was upon the lots of land claimed by the plaintiffs on the 19th day of January, 1894, without regard to the age of the timber at that time, and that the defendants have the right to remove any such timber. Any trees that have come into being since the 19th day of January, 1894, and grown upon said tracts of land, belong to the plaintiffs, and the defendants have no right to cut and remove the same. The defendants have no right to remove timber over the tramroad running through plaintiffs' land from any other

tracts of land that they may own. The tramways having been practically constructed before the petitions in these cases were filed; under the evidence and circumstances surrounding their construction and purposes for which the tramway was evidently built, I am of the opinion that I should allow the defendants to use the same, subject to the plaintiffs' undoubted right to recover damages for such use, in the hauling and transportation of any other timber or material over the same, other than the timber belonging to defendants that may be cut from plaintiffs' land. The defendants are, until the further order of the court, enjoined from cutting or removing any of the timber complained about that has come into being, that is, come up and has grown upon the lands of the plaintiffs since the 19th day of January, 1894. The defendants are required to give bond and security, to be approved by the clerk of the superior court of White county, in the sum of fifteen hundred ($1500.00) dollars, in each of these cases, to pay to the plaintiffs whatever sum that they may be entitled to for any damages for the use of the tramway in hauling timber from any other lots. In event defendants fail to give these bonds, then they are enjoined from the use of the tramway for hauling any other timber from any other lots over the same." To this judgment each plaintiff excepted.

*Underwood & Underwood* and *W. A. Charters,* for plaintiffs.

*I. L. Oakes, G. S. Kytle,* and *H. H. Dean,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. "Timber" is not a word of invariable meaning, and the particular meaning to be given to it depends on the connection in which it is used. In construing a deed conveying timber, it is proper to take in consideration not only the terms of the conveyance but also the purposes of the parties to the deed. *Pennington* v. *Avera,* 124 *Ga.* 147 (52 S. E. 324). In discussing the relative rights of a life-tenant and the remainderman, Judge Harris, after declaring that the former is not allowed to cut timber or to commit any other kind of waste, said: "Timber is used technically to denote green wood of the age of twenty years or more, such as oak, ash, elm, beech, maple, and with us would include walnut, hickory, poplar, cypress, pine, gum, and other forest trees." *Dickinson* v. *Jones,* 36 *Ga.* 97, 104. There is an intimation in *Handcock* v. *Massee & Felton Lumber Co.,* 127 *Ga.* 698 (56 S. E. 1021), that

this definition may not be sufficiently comprehensive.  We do not think any absolute, technical definition should control in ascertaining the parties' conception of the meaning of a word descriptive of the subject-matter of their contract.  The deed discloses that the grantor intended to convey all trees of whatsoever kind and description, then growing or being on the land, which properly were classifiable as timber, save only so much as was necessary for firewood and keeping up the farm.  In demanding and receiving an easement of entry upon the land for the purpose of cutting timber (trees) and removing the same, the grantee evinces a purpose to purchase the trees for use as timber.  It would therefore seem to be clear that the deed was intended by the parties to operate only on such trees as came within the conception of the parties as to the meaning of "timber" at the time the deed was executed.  One party was contracting to sell and the other to buy trees growing and being on the land, which were to be removed therefrom.  There is nothing in the deed to indicate that the parties intended to establish a nursery for cultivation of sprouts and saplings for removal after they had developed by growth into trees of such size as to be convertible into lumber suitable for building and allied purposes.  Under the phraseology of this deed, we think that the word "timber" means such trees as were fit to be used in building, manufacturing, or similar construction, and was not intended to embrace sprouts and saplings.  See Broad River Lumber Co. *v.* Middleby, 194 Fed. 817, 819 (114 C. C. A. 521) ; Hicks *v.* Phillips, 148 Ky. 670 (147 S. W. 42, 47 L. R. A. (N. S.) 882) ; Anderson *v.* Miami Lumber Co., 59 Or. 149 (116 Pac. 1056)'; Gulf Yellow Pine Lumber Co. *v.* Monk, 159 Ala. 318 (49 So. 248).  More than twenty years elapsed from the purchase of the timber before the assignee of the grantee began to cut it.  The present owner of the timber conveyed to John Martin is engaged in operating a sawmill for converting trees into lumber.  Such trees as were not suitable to be converted into lumber for building, manufacturing, or for any allied purpose, at the time of the conveyance to John Martin, would not fall within the operation of the deed from M. L. Vandiver, executed in 1894.  The plaintiff purchased the land subject to the prior sale of the timber; he was entitled to all the timber upon the land which was not embraced in the conveyance to Martin.

2. The plaintiff owned other land contiguous to lot 2. The Byrd-Matthews Lumber Company owned the timber on a large area of land beyond land lot 2. The evidence authorized a finding that the plaintiff knew that the defendants were purchasing a right of way through lots intervening their mill and their timber, for the purpose of constructing a tramroad over which the trees were to be hauled to the mill. To effectuate this object the plaintiff sold to the defendants a right of way over other land, and knew that the defendants intended to use the tramroad over lot No. 2 as a part of the line of tramroad; he discussed with the agents of the defendants the selection of a right of way through lot No. 2, and was employed by the defendants to repair a road on lot No. 2 which had been injured by the construction of the tramroad over it. No objection was ever urged against the plan of the defendants to construct the road through his property until the defendants had incurred great expense on his implied assent, and not before the tramroad had been nearly completed through his property. As to these matters of alleged estoppel the plaintiff joined issue. If the plaintiff stood by while the tramroad was being constructed at heavy expense, and encouraged the defendants by selling connecting rights of way over other land, and by other acts, to believe that he impliedly assented to the use of the tramroad over lot No. 2 for hauling other timber of the defendants, and took no steps to prevent the work until it was nearly completed through his land, he would be estopped from afterwards obtaining an injunction against the completion of the tramroad and its use for hauling other timber of defendants. *Southern Marble Co.* v. *Darnell,* 94 *Ga.* 231 (21 S. E. 531). There was no evidence that the freehold was damaged by the construction of the tramroad; and furthermore the court required bond of the defendants against loss by the plaintiff on this score.

The judgment must be modified so as to extend the injunction against cutting all trees which were not of sufficient size to be regarded as timber trees on January 19, 1894.

*Judgment affirmed, with modification. All the Justices concur.*