## AVERY & SONS INC. *et al. v.* CITY OF ATLANTA.

1. The mayor and general council of the City of Atlanta are authorized by its charter to acquire land for widening or extending existing streets, or for opening new streets, and to assess all or any part of the cost of obtaining same upon property located in an assessment district therefor, in proportion to the benefits to the parcels of land located in said district.

2. The method of creating such assessment district and of levying assessments for such street improvements is provided by the act of August 4, 1921, amending the charter of the City of Atlanta (Acts 1921, p. 665), as amended by the act of August 7, 1924 (Acts 1924, p. 444); and by said amendment provision is made for notice and opportunity to the owners of property within such assessment district to be heard before the street committee of the city council, on the question as to the benefit or amount of benefit that will accrue to their lands, and as to the amount of the assessments, if any, that should be made against their lands on account of the proposed improvement; and provision is likewise made for notice and opportunity for such owners to appear before the meeting of the council and make objections to the passage of the ordinance creating such district or the assessments contained therein.

3. After the mayor and general council, on the report of its street committee, finally adopts an ordinance establishing a taxing district for a proposed improvement, and providing for the improvement, and the same is not stopped by injunction or other legal process, then the owners will be concluded from further objecting thereto, either as to the form in which the work is done, or the map made, or any other technicality connected therewith; and when such owners do not take steps to enjoin such ordinance or the assessments levied on their property until the improvement has been practically completed, and the city has expended a large sum in making the improvement, relying upon such assessments to meet ·the expense, they will be precluded and estopped from attacking such assessments upon the grounds, (a) that the collection thereof will deprive them of their property in violation of the due-process clauses of the State and Federal constitutions, and (b) that the levy of such assessments has been made in an arbitrary and unreasonable manner.

No. 5490. JANUARY 13, 1927. REHEARING DENIED FEBRUARY 19, 1927.

Petition for injunction. Before Judge E. D. Thomas. Fulton superior court. May 4, 1926.

*Hewlett & Dennis,* for plaintiffs.

*J. L. Mayson, C. S. Winn,* for defendant.

HINES, J. After the completion of the Spring Street viaduct the City of Atlanta, under the provisions of its charter· to which

---

Eminent Domain, 20 C. J. p. 536, n. 50; p. 559, n. 80; p. 560, n. 81.
Municipal Corporations, 28 Cyc.. p. 945, n. 61; p. 947, n. 96; p. 1122; n. 13; p. 1141, n. 11, 12; p. 1145, n. 59; p. 1173, n. 6.

we shall hereafter refer, determined, in response to an insistent and general demand, to widen and extend Madison Avenue through to Whitehall Street, thus connecting Spring Street, Madison Avenue, so widened and extended, and Whitehall Street, and making a thoroughfare through both north and south Atlanta. To accomplish this purpose the city determined to create a special tax district and to levy sufficient assessments upon the realty located in said district to raise the necessary funds to meet the costs of this improvement. This taxing district embraced the property lying on Madison Avenue thus extended, property lying on portions of Whitehall Street, and property lying on certain cross streets. 596 feet of property fronting on Madison Avenue, immediately south of Peters Street, were assessed at $25 per front foot; 1,757 feet of property abutting on Madison Avenue north of Peters Street, were assessed at $15 per front foot; 3,670 feet of land abutting on Whitehall Street, and extending from Forsyth to McDaniel Street, were assessed at $5 per front foot; 2,800 feet of land fronting on Whitehall Street, and extending south from McDaniel Street to the right of way of the Central of Georgia Railway, were assessed at $4 per front foot; and land fronting on the cross streets within such district was assessed at $10 per front foot.

The mayor and general council of the City of Atlanta are authorized by the charter of the city to acquire land for widening and extending existing streets, and to assess all or any part of the cost of obtaining the same against property located in an assessment district established for such purposes, in proportion to the benefits to the lands located therein. Before undertaking to create a district for such purposes, the council shall appoint its committee on streets as viewers of the proposed improvement and of the land thereby affected. This committee, after viewing the land, shall indicate to the chief of construction the land that will be affected by the opening of the street or portion of street. Said chief, or his assistant, shall make a map of all such land and submit the same to this committee, who shall go over the map and make such changes thereon as in their judgment shall include all land that is benefited by the proposed improvement, or omit therefrom any land which in their judgment is not benefited thereby. When this map has been perfected it shall be reported back to coun-

cil, and an ordinance adopted establishing a taxing district for the widening, opening, or extension of the proposed street, and for the assessment of all or any part of the cost thereof upon the land in said taxing district, in proportion to the benefits to the respective parcels thereof. But before any ordinance is adopted to widen, open, or extend a street, and the adoption of such taxing district, the owners of property within the proposed taxing district shall be notified by mail, at least five days before the time of defining or fixing the taxing district, and providing for the improvement. At such time the committee on streets shall have a meeting and give all parties interested, and who may desire to be heard, an opportunity to appear and oppose or favor the proposed improvement. At such meeting all parties interested, who may desire to be heard, shall be given an opportunity to be heard as to the question of benefit or amount of benefit that may accrue to their land, and also as to the amount of assessment made upon their land on account of such proposed improvement. After hearing from property owners, the committee shall make a report to the mayor and general council, embodying recommendations as to whether or not said improvement shall be made. If the committee recommends that said improvement shall be made, then it shall in its report to the mayor and general council furnish the amounts of assessments against the respective property owners located in said district, which shall be assessed against them, and shall at the same time present to the mayor and general council an ordinance providing for said improvement, together with the assessments which shall be made against the respective property owners located in the taxing district. No ordinance providing for such improvement, the establishment of said tax district, and levying of assessments against the respective property owners located therein, shall be passed until such property owners are notified of the introduction of such ordinance by an advertisement that shall be inserted at least one time in one of the daily papers of the city, ten days before the time of hearing. Such advertisement shall give notice of the introduction of the ordinance, the street to be improved, the amount to be raised by assessment in the taxing district, a description of the area to be covered by said district, and shall notify the property owners or others interested to appear at the meeting of the general council to be held at a

time stated, and to make any and all objections they may desire to urge to the passage of said ordinance or the assessment contained therein. If any property owner or other interested person desires to make objections to the passage of said ordinance or the assessment contained therein, full opportunity shall be given at said meeting for such purpose. After hearing objections, if any are made to the passage of said ordinance or the assessments contained therein, the general council have full right and power, in their discretion, to order said improvement, or to reject said ordinance, or to alter any of the assessments contained therein, either by increasing or decreasing them. If the mayor and general council, on the report of the committee, adopts an ordinance establishing a taxing district for the proposed improvement, and providing for the improvement, "and the same is not stopped by injunction or other legal process, then the owners of property within such taxing district shall be concluded from further objection thereto, either as to the form in which the work has been done, or the map made, or any other technicality connected therewith." City Code of Atlanta (1924), § 273; Acts 1921, pp. 665, 668, § 1-G.; Acts 1924, p. 444.

All of the above provisions of the charter of the City of Atlanta were complied with, in creating the tax district, and in making assessments upon the property located therein for the purpose of raising the necessary funds to meet the cost of this improvement, unless it be that the street committee refused to hear some of the plaintiffs, upon which subject the evidence is conflicting; but such refusal is not made a ground of attack upon the validity of the assessments. There is no contention that the mayor and general council did not hear from property owners who were interested in approving or opposing this project, and that, without having given plaintiffs an opportunity to be heard, the mayor and general council passed the ordinance of April 20, 1925, creating the taxing district and levying the assessments, as above set out, upon the property embraced in the district, for the purpose of raising the necessary funds with which to make the improvement. On March 2, 1926, plaintiffs, who are numerous, and who owned property on Whitehall Street in said tax district, filed their petition against the City of Atlanta, in which they sought to enjoin the levy of assessments upon their property for such im-

provements, upon the grounds, (a) that the same violates the due-process clause of the State constitution, and the fifth and fourteenth amendments to the constitution of the United States; and (b) that said assessments are arbitrary and unreasonable, because they are made in each instance against the respective parcels of property according to front footage on a street other than the one to be improved, and without any regard to benefits, are not uniform as between the respective owners of said property, and constitute a taking of their property without due process of law. By an amendment to their petition plaintiffs allege that said assessments were levied under the act of August 4, 1921, and the act of August 7, 1924, hereinbefore referred to, and that said assessments and said acts are void, because said act of 1924, in the second section thereof, is void as an amendment of the act of 1921, because it does not correctly refer to the act sought to be amended. They further allege that the assessments are arbitrary and unreasonable, for the reason that said taxing district begins at the southern extremity of the proposed extension, and runs thence in a southerly direction along Whitehall Street exclusively, and does not include any streets that intersect Whitehall Street between the intersection of that street and Forsyth Street and the extreme southern boundary of the taxing district.

In its answer the city alleged, and the undisputed evidence shows, that Madison Avenue had already been widened and extended, as provided for in said ordinance, before the commencement of this suit, that plaintiffs knew that said work was in progress, that they saw the street widened, extended to and connected with Whitehall Street, that they knew that their property would be assessed for said improvements under the provisions of the city charter and under the notice given them of the intended passage of said ordinance creating said tax district and levying assessments upon their property, and that they stood by and allowed said improvements to go on; whereby the city claims that they are now estopped from making any objection thereto. It was shown that the city had expended approximately $266,341.13 in making said improvement, and that said sum had been expended before the plaintiffs filed their present suit to enjoin the assessments levied to meet said expense.

In the view that we take of this case, it is unnecessary to

determine whether the grounds upon which the plaintiffs seek to enjoin the assessments upon their property are sound or not, for the reason that they are now precluded from attacking the validity of the ordinance creating this special tax district and the assessments levied on their property thereunder. With full knowledge of the passage of the ordinance creating this tax district and levying assessments upon their property to meet the expense of this improvement, the plaintiffs stood by and took no steps to enjoin the city from making this improvement until nearly a year after the passage of the ordinance, and not until the improvement had been practically completed and the city had expended the sum of $266,341.13, in making this improvement. The city charter provides that after the mayor and general council, on the report of the street committee, "finally adopts an ordinance establishing a taxing district for the proposed improvement, and providing for the improvement, and the same is not stopped by injunction or other legal process, then the owners of property within such taxing district shall be concluded from further objection thereto, either as to the form in which the work has been done, or the map made, or any other technicality connected therewith." Properly construed, this provision of the charter requires the owners of property within the taxing district to take timely steps to enjoin the ordinance establishing a taxing district for a proposed improvement, and providing for the improvement; and if such owners, with full knowledge of the passage of such ordinance, and of the levy of assessments made upon their property to meet the expense of the proposed improvement, stand by, take no steps to enjoin such ordinance and prevent the proposed improvement, and permit the city to expend a very large sum of money in making the proposed improvement, then such owners will be concluded from seeking to enjoin the assessments levied to meet the cost of such improvement. When this ordinance was passed and these assessments were levied upon their property in the taxing district to meet the expense of this improvement, the plaintiffs should have moved with reasonable dispatch to enjoin the enforcement of this ordinance and the assessments made upon their property, if the same were void for the reasons and upon the grounds now urged by them. They could not wait until the improvement had been made and the city had gone to large expense in effecting it,

and then undertake to enjoin the collection of the assessments levied upon their property for the purpose of raising funds to meet the expenditures so incurred by the city. In such circumstances equity closes its doors against the plaintiffs. *City of Marietta* v. *Dobbins,* 150 *Ga.* 422 (104 S. E. 444); *Montgomery* v. *Atlanta,* 162 *Ga.* 534 (134 S. E. 152).

But independently of this provision of the charter of Atlanta, we think the plaintiffs are estopped from now attacking these assessments. In *Iverson* v. *Saulsbury,* 65 *Ga.* 724, this court held that "Beneficiaries of trust property sold under an invalid order of the chancellor, who for years have seen the purchasers erecting valuable improvements thereon without objection, are estopped from setting up title thereto." In *Dulin* v. *Caldwell,* 28 *Ga.* 117, this court held that "A party is not entitled to an injunction who shows that he has been negligent and careless in guarding his rights, and that if he has been subjected to loss it was because he had not attended to his interests in proper time." In *Wood* v. *Macon & Brunswick Railroad Co.,* 68 *Ga.* 539, it was ruled that the writ of injunction is designed to prevent, and not to undo; and that without strong reason therefor, if delayed until progress at heavy cost has been made, the application should not be granted. In *Southern Marble Co.* v. *Darnell,* 94 *Ga.* 231 (21 S. E. 531), this court said: "If the owner stood by while the ditch or canal was being constructed at a heavy expense, and made no objection and took no steps to prevent the work or its consequences, until after completion, he would be estopped from afterwards obtaining an injunction against the use of the ditch, or the continuous diversion of the water by means of the same." This ruling was followed in *Vandiver* v. *Byrd-Matthews Lumber Co.,* 146 *Ga.* 113, 117 (90 S. E. 960). In *Holt* v. *Parsons,* 118 *Ga.* 895 (45 S. E. 690), the principle is stated thus: "A party is not entitled to an injunction when, with full knowledge of his rights, he has been guilty of delay and laches in asserting them, and has negligently suffered large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction." To the same effect, see *City of Elberton* v. *Pearle Cotton Mills,* 123 *Ga.* 1 (50 S. E. 977); *A. & B. Ry. Co.* v. *Kirkland,* 129 *Ga.* 552 (59 S. E. 220). In cases where there is jurisdiction, the property owner will be estopped from questioning the validity

of the proceedings by the mayor and council in levying an assessment for a street improvement, if he stands by and permits the work to be done without interposing any objection. *Draper* v. *Atlanta,* 126 *Ga.* 649, 653 (55 S. E. 929). To the same effect see *Burns* v. *Atlanta,* 148 *Ga.* 549 (3) (97 S. E. 536). In *City of Marietta* v. *Dobbins,* supra, this court said: "In the case at bar all the petitioners had full knowledge that the paving was being done on the street upon which their land abutted, and took no steps to enjoin the prosecution of the work until it had been almost completed. . . In these circumstances they were estopped, by their neglect and laches, from enjoining the appropriation of so much of the assessments made against them as would be necessary to satisfy and discharge the equitable obligation the city was under to repay the loan made for the purpose of paying the contractor for paving the street, and which was used for that purpose." In this case the plaintiffs had full knowledge that this street was being widened and extended under this ordinance and upon the faith of these assessments. They took no steps to enjoin the prosecution of the work until it had been about completed, and until the city had made a large expenditure in doing this work. In these circumstances they are now estopped from attacking these assessments. By the failure of the plaintiffs to move in this matter before the improvement was begun, and by their neglect and laches in waiting until the work had been completed and a large expenditure had been made by the city in making this improvement before they moved to enjoin the assessments on their property, they are now precluded and estopped from attacking the validity thereof, and from seeking injunctive relief against their collection.

*Judgment affirmed. All the Justices concur.*