No. 95.—WILLIAM AKINS and others, plaintiffs in error, *vs.* BENJAMIN H. HILL and another, administrators, &c.

[1.] In a bill against the representatives of a deceased administrator, to open the accounts of the administrator, setting forth those accounts, and making no allegation of fraud, error or mistake: *Held*, that such bill is not demurrable, upon the ground that the complainant's case shows that they have no right to recover, and that it is competent for them to recover the interest, if any, due upon the accounts, and also to recover commissions illegally retained.

[2.] A bill filed by distributees to recover against the representatives of a deceased administrator, upon the accounts returned and passed by the Court of Ordinary, nineteen years after the accounts were rendered, without any allegation of fraud, or setting forth any excuse or reason for the delay: *Held*, to be barred by lapse of time.

In Equity, in Warren Superior Court.   Decision on demurrer, by Judge SAYRE, October Term, 1849.

William Akins died intestate in 1823, and Joseph D. McFarland and James Bailey were duly appointed administrators upon

his estate, who made returns upon the estate, each year, until the year 1831. The returns were not all made on the first Monday in January in each year. In 1838, there was a return of a sum of money, collected by suit in 1835, and of its payment to the heirs of William Akins. In the return made in 1830, the administrators charged commissions on the whole estate received and paid out by them. There was no record of a settlement and receipts in full, but it appeared from the returns that the whole estate received had been paid over.

It appeared from the returns that a large sum of money was in the hands of the administrators for several years, and no interest was charged against them in the returns.

In 1849, the distributees at law of William Akins, filed a bill against the representatives of James Bailey and the representatives of Joseph D. McFarland, both of whom had, since the last return, departed this life. The complainants attached to their bill an exemplification of the returns of the administrators, and alleged that the commissions were illegally charged, annual returns not having been made as required by law. The bill farther charged, that the returns showed a large balance due them. The prayer was for an account and settlement.

To this bill, the defendants demurred generally; and also, that the claim, if any, was barred by the Statute of Limitations; and farther, that the complainants, by their laches and acquiescence, were barred from any relief in a Court of Equity.

Upon hearing the demurrer, the Court below sustained it, on the grounds that " the bill showed that nothing was due the complainants, and that their demand was barred by the lapse of time."

To this decision complainants excepted and allege error therein.

BENJ. H. HILL, for defendants in error, submitted:

1st. The returns of an administrator, executor or guardian, when approved by the Ordinary, are adjudged by a Court of competent jurisdiction, and are good and conclusive until impeached, as other judgments. *Stell vs. Glass*, 1 *Kelly*, 486. *Brown et al. vs. Wright*, 5 *Ga. R.* 29.

2d. Courts of Equity act by analogy, and in obedience to the rule of limitations at Law, (2 *Story's Eq. Ju.* §1520,) and will bar, even in cases of trusts executed, disavowed or otherwise deter-

mined.   *Ib.* §1520, *a.* 1521, *a.   Boone vs. Chiles,* 10 *Pet.* 223. *Hovenden vs. Lord Annesley,* 2 *Sch. & Lef.* 629 *to* 640.   *Smith vs. Clay,* 3 *Bro. Ch. R.* 523, *note.*   And lapse of time, even in cases where the rule of limitations, by analogy, will not hold, will bar, on the independent principles of Equity.   *Ib.*   See, also, *Mc-Knight vs. Taylor,* 1 *Howard,* 168.   *Piatt vs. Vattin,* 9 *Pet.* 416. *Willison vs. Watkins,* 3 *Pet.* 52.

3d.  And it is now settled, that if the complainants have any excuse for the delay, or have labored under any disability which prevents the application of the rule, such excuse or disability must appear from the bill, or a demurrer will lie.   *Story's Eq. Pl.* §484.   *Delorain vs. Brown,* 3 *Bro. Ch. R.* 519, *note* 1, *and* 528, *note* 7.  See also the authorities above cited, and especially *Piatt vs. Vattin,* 9 *Pet.* 416, *and Hovenden vs. Lord Annesley,* 2 *Sch. & Lef.* 637 *and* 638.   In which last case, the whole doctrine is ably reviewed, and the above rule adopted.

L. H. STEPHENS and R. TOOMBS, for plaintiffs in error, submitted:

1st.  The Statutes of Limitation and the lapse of time, do not apply to a direct trust.   *McDonald vs. Sims et al.* 3 *Kelly,* 396. *Beckford et al. vs. Wade,* 17 *Ves.* 95.   4 *Howard's U. S. S. C.* 503.   7 *Johns. Ch.* 90.   2 *Merivale,* 173.

2d.  The trust imposed upon an administrator, is a direct trust. *Prince,* 228.

3d.  On *demurrer,* the Court cannot look into the *evidence,* to see if *it* shows anything to be due—they must look only to the *bill.*

4th.  The evidence here, without attacking any addition, shows a large amount due, upon a simple calculation of *interest* on the returns, and the bill *attacks* the returns for having reserved *commissions,* when annual returns have not been made.

By the Court.—NISBET, J. delivering the opinion.

The bill in this case sets forth the right of the complainants as distributees; the appointment of Joseph D. McFarland and James Baily, administrators upon the estate of their ancestor; that they took possession of the estate, returned an inventory, made returns

of their actings and doings, charged and credited themselves with full commissions, and that all the debts are paid; that said administrators have both departed this life, and that the defendants are their representatives, one as administrator duly appointed, and the other as executor in his own wrong. It charges. that there is still due and owing to them, from the estate of their deceased father, the sum of five thousand dollars, and that the administrators, not having made annual returns, are not entitled to commissions. The prayer is for an account and settlement. The bill was demurred to, and the presiding Judge sustained the demurrer:

1st. Because the bill showed that nothing was due to the complainants; and,

2d. Because their demand was barred by the lapse of time.

Both of which decisions are excepted to and assigned for error.

[1.] The decision of the Court upon the first ground, as I learn from the argument, went upon reasoning like this: " The complainants, in their bill, admit the correctness of the returns made by the administrators; there is no allegation of any kind against them; they are part of the bill, and are *prima facie* evidence in favor of the defendants; and complainants, charging no fraud and no error, by mistake or otherwise, could not, on the hearing, impeach them. The return of 1830, particularly, shows a settlement of the estate, because it shows the whole amount received, and the disbursement of that amount; and contains a charge of commissions, in the following form, to-wit : *Commissions on* $2,969 27 cts. paid out, and $3,117 69¾ cts. received—commission 2½ per cent—being commissions on the whole estate administered by me, $152 42 cts. This return is *prima facie* evidence of an administration in full; is not assailed by the bill; and therefore, from their own showing, there is nothing due to the complainants."

It is true, as there is no allegation made against these returns; no prayer for surcharging and falsifying; they are to be taken as correct. The complainants can recover nothing upon the ground of fraud or mistake in them; they are estopped, upon the face of their own pleadings, from denying their correctness. But admitting all this; conceding that the defendants are not liable to be called to account on the returns, so far as they show receipts and payments, yet the administrator is liable to pay interest on the

Atkins and others *vs.* Hill and another.

sums which they show he has received. The accounts show no disposition of interest. The conclusion of *Law* is, that the representative is liable for interest upon this, his confessedly accurate account; it was the duty of the Court so to have ruled. Whether, *in fact*, there is interest due, is a question for ascertainment by a Jury. The Court could not—it is not within his province to ascertain that fact. All other things conceded, the case made would entitle the complainants to recover interest, if any be due, on the account; and also, the amount of the commissions retained, if the returns were not annually made. To ascertain these facts, the cause ought to have been retained for a hearing. As to the right to recover commissions retained, when the returns are not made annually, and also as to the question of interest, see *John S. Fall vs. Administrator of Simmons et al.* 6 *Ga. R.* 265.

[2.] Equity will not aid in the enforcement of stale demands. Although Statutes of Limitations are obligatory in Equity as well as at Law, yet there are cases where that Court will make time a bar, although not strictly pleadable as a limitation. *Mere* lapse of time is a good defence in Equity; so also, rights are presumed to exist from lapse of time. Facts will be presumed, even where it is ascertained that they do not exist; as a grant, although they are required to be recorded, and the period is within legal memory. Not that the Courts will take, as a matter of belief, the fact to be true, as that a grant exists when there is no record of it, but, "it is supposed," says Lord *Mansfield,* "from a principle, and for the purpose of quieting possession." The peace of society requires that there should be limits put to litigation. The justice and sense of civilized communities have ever favored limitation laws. There is no principle of Equity sounder, more conservative and more prolific, in all the fruits of peace, than this: that he who slumbers over his rights, with no impediment to his asserting them, until the evidence upon which a counter claim is founded, may, from lapse of time, be presumed to be lost; until the generation cognizant of the transactions between the parties, has passed away, and until original actors are in their graves, and their affairs are left to representatives—the Law, in the exercise of an equitable sovereignty, *presumes it to be unjust,* that under such circumstances, a complainant should be heard; and in nine cases out of ten, it is unjust in fact, as well as in theory. It is presumed, and the presumption grows out of the prin-

ciples of human nature, developed in universal experience, that men will use reasonable diligence to get what rightfully belongs to them. Our observation of men teaches that they are more likely hurriedly to assert a false claim, than tardily to assert an equitable one. If the claim be equitable, and an adverse claim is acquiesced in, until the rights of third persons are involved, or until, from the obliterations of time, the proofs of the adverse claimant are lost, yet that equitable claim ought to yield to that general, social peace, upon which its exclusion is founded. Nor ought the demandant to complain, for, for long years the Courts of Justice were open to him—he might have entered, but would not. He loses his rights, because from stupidity, indifference, convenience, or some other cause, he has failed to assert them. His laches cannot be made available to him, through a visitation of wrong and disaster to hundreds of his fellows. The laws are not for the individual alone—they are also for the safety and peace of the whole State.

As already hinted, the principle upon which Courts of Equity proceed in such cases, is, that the *lateness of the demand, arising from lapse of time, is presumptive evidence against its justice.* This presumption the Court will draw from the evidence in the case, or from the case made (as in this case,) from the pleadings. Whether lapse of time can be considered on demurrer, is a mooted point. It was considered in this case on demurrer; but *that* is not assigned as ground of error, and we are not called upon to determine it. (As to this question, see the authorities collected in a note to *Deloraine vs. Brown,* 3 *Brev. Ch. R.* 528.) There is no doubt but that it may be taken advantage of, by motion to dismiss the bill at the hearing. *See last case cited, and Giles vs. Baremore,* 5 *Johns. Ch. R.* 550.

The reasons of this rule in Equity, are comprehended in the following short extract from the opinion of *Ch. Kent, in Giles vs. Baremore, ubi supra.* " The presumptions to be drawn by the Courts in the case of stale demands, are founded in substantial justice and the clearest policy. If the party, having knowledge of his rights, will sit still, and without asserting them, permit persons to act as if they did not exist, and to acquire interests, and consider themselves as the owners of the property, there is no reason why the presumption should not be raised. It is therefore well settled, that the presumption that a demand has been

satisfied, prevails as much in this Court as at Law.    Claims the
most solemnly established upon the face of them, will be pre-
sumed to be satisfied, after a certain length of time.    Matters of
record—deeds—even a private Statute, may be presumed to make
a good title.    A Court of Equity makes the presumption on the
facts before it.    The presumption resolves itself into this : that a
man will naturally enjoy what belongs to him.    These are prin-
ciples of decision adopted and sanctioned in a variety of cases,
and by a succession of learned Judges in the English Court of
Chancery, and their solidity is not to be questioned."    *See Jones
vs. Turberville*, 2 *Vesey, Jr.*  11.    *Pickering vs. Lord Stamford,
Ib.* 272.    *Hillary vs. Waller,* 12 *Vesey,* 265, '6, '9, 270.    1 *Fon-
blanque's Eq.* 244, *notes.*    2 *Story's Eq. Ju.* §1520, *notes.*    3 *Bro.
Ch. R.* 640.    1 *S. & Lef.* 413,  428.    2 *Ib.* 607, 630 *to* 640.    2
*Jac. & Walk.* 1, 138 *to* 152.    7 *John. Ch. R.* 93.    3 *Ib.* 190.
20 *Johns. R.* 576.    6 *Wheat.* 481.    3 *Peters,* 44.    6 *Ib.* 61.    5
*Mason,* 143.

The above I consider the most satisfactory references for the
general doctrine—the cases are almost innumerable, which re-
late to it.

The rule in Equity applies to accounts.    That Court will not
permit them to be overhauled in favor of a party who has slept
upon his rights, without any just cause, for a number of years ;
more especially will it not permit this to be done, as against the
representative of a party who may be supposed to have had the
means of defence in his life-time, but who may have left his
successors without the requisite vouchers.    As to the length of
time, there is no certain and definite rule.    Each case must de-
pend upon the exercise of a sound discretion, arising out of the
circumstances.    The principle being incontrovertibly settled, and
no definite time being established in the books, it devolves upon
us, as Chancellors, in the exercise of a sound discretion, guided
by precedent, and our own views of policy, to say whether, ac-
cording to the facts and circumstances of this case, the demand
of the complainants is barred by lapse of time.    To do so, we
look first to the facts and circumstances.    The administration
upon the estate of the intestate, was taken out in 1823.    Returns
were made up to 1830, when the accounts seemed to be closed
at the Ordinary.    Then it was that the accounts, which are sought
to be overhauled, ceased ; and it is upon accounts at that time

rendered, that the claim of interest is predicated.   It is true, that afterwards, in 1838, an account was rendered at the Ordinary, which exhibited the receipt of a small sum of money  collected by suit, after the return of 1830, and also the payment of that sum. The ground of claim is, the accounts of the administrator as closed in 1830.   Then it was that the complainants' right of action is presumed to have accrued.   The return, and record of the return, was notice to them.   That they might have sued before that time, and called the administrator to account, is clear ; *then,* however, as they exhibit the case on the record, they had a right to sue.   Being, then, by the record, notified of the state of the accounts, and having a right then to sue, then it was that their acquiescence commenced.   *Hill on Trustees,* 265.   2 *Ball & B.* 118.   *Trevelian vs. Charter Rolls, June* 2, 1835, 10 *Vesey,* 428.   4 *Beav.* 427.   3 *Meriv.* 208.

This right to sue is not defeated by the subsequent return in 1838.   That return may be considered as an admission of the continuance of the trust ; and were the Statute pleaded and applicable, it might be held a sufficient reply to it.   This case goes upon different principles.   They might have sued in 1830 ; time runs against them from that time.   The suit was instituted in 1848, nineteen years after the return of 1830, and eleven, or thereabout, after the return of 1838—nineteen years after their right of action accrued.   The bill does not show when these administrators died, but states that they are dead, and the present defendants are their representatives.   Now, the facts are, that after the decease of the administrators, and about nineteen years after the right of action accrued, these complainants come into a Court of Equity, to overhaul their accounts, and to hold the estate of the deceased trustees liable for interest.   They give no excuse— no want of knowledge—no disability ; they charge no fraud, and state no reason, whatever, for not suing earlier.   But admitting the contrary of all this, they show, by their bill, that they have slumbered over their rights for about nineteen years.   Shall they be heard ?   We think not.   We are clearly *of opinion that this is a case where the bar, from lapse of time, ought to be applied ;* it falls fully within the principles and policy of the rule ; the more especially, as the original administrators are dead, and may have left their successors without the evidence necessary to a successful defence.

In England, twenty years, being the longest term of statutory

limitation, has been taken as an equitable term in many cases. This is not, however, a settled term. The discretion is still with the Court there, to apply a shorter term.

It is argued that the term ought to be greater here than in England, for the reason, that there, there is no record of the accounts of an administrator, executor or guardian, authorized by law, and which, by law, as in this State, is *prima facie* evidence in favor of the trustee. Because the returns are made evidence, it is said that the reason of the rule is not so strong here as in England. There is some force in this idea. But giving it its full effect, we see no reason why any greater length of time should be required in this State, than that which had elapsed in this case. The returns are not conclusive; they may be attacked; the trustee, or his representatives, may be put upon their defence; he may be haled into Court, and his estate harried; his proofs may be required; the record and the *prima facie* proof which they afford, do not resist and annul the presumption of injustice, arising from his being called to account at a time remote from the accrual of his liability to suit, nor do they remove the presumption of right in the defendant, arising from the acquiescence of the plaintiff, or prevent injuries to third persons, by the disturbing of titles considered as sound. The reason, and policy, and equity of the rule, as settled elsewhere, still obtain with us.

I am, myself, perfectly satisfied of the wisdom of that *policy*, which, after a reasonable length of time, exempts a trustee from liability to suit. I do not at all question the propriety of that vigilance which the law exerts over the administration of trusts. But, with some hesitation, it is true, I hazard the opinion, that the policy of that vigilance may be defeated, (perhaps in this State has been impaired,) by a course of legislation and administration against guardians, executors, administrators and other trustees, too stringent. After all that the law can do to insure fidelity, these trusts are, to a great extent, fiduciary. Their faithful administration must depend, in a great degree, upon the honor and honesty of the trustee. Even the law ought to repose some confidence in the fidelity of the citizen. If reliance is placed alone upon legal coercion, then the idea may occur, that the war between the law and the trustee, is a fair one; such a feeling might obtain, on the part of a man whose morality is ruled alone

by the laws of the land.   Unnecessary stringency must have the effect of driving good men from the administration of trusts, and leave the interests of minors, distributees, creditors, &c. to the tender mercies of the dishonest.   Particularly will prudent and good men, unless influenced by motives of friendship or consanguinity, avoid trusts, if, at a time far removed in the future, they be held liable to be called to account; they ought to have repose; they should be permitted, their trusts being in their view ended, to die with the conviction that their heirs will not be wronged by an accountability, exacted when too late to be resisted.

A few precedents are submitted to justify, upon authority, our judgment in this case.

The first I refer to is very much its counterpart; and being decided by our highest tribunal, might, of itself, sufficiently support it.   The case of *Lupton vs. Janney*, (13 *Peters' R.* 381,) presents the following facts : the widow and devisee of the testator, filed a bill against the representative of her husband's estate, in 1831, seeking to open the accounts of the administration, upon the allegation of certain errors and omissions therein, as they were rendered and settled by three successive returns, before the Orphan's Court of Alexandria.   The bill makes specification of certain errors in the accounts of the executor ; the prayer, says Mr. Justice *Story*, " Is, in effect, to open the accounts, with general liberty to surcharge and falsify."   The answer, among other things, relied upon lapse of time, as a bar to complainant.   The time which had elapsed from the accrual of the right to sue on the several returns, was a period varying from twelve to sixteen years.   In this case, the time varies from eleven to nineteen years.   The learned Judge, Mr. Justice *Story*, who delivered the opinion of the Court, declared it unnecessary to refer to authority.   He said, " Nothing is more clear, than the general rule, that *ex parte* settlements of accounts of this sort, in the Orphan's Court, being matters within the acknowledged jurisdiction of that Court, in the administration of estates, are *prima facie* evidence of their own verity and correctness, and the *onus probandi* is on those who seek to impeach them.   If they seek to impeach them, it should be by a suit brought *recenti facto*, within a reasonable time, and at farthest, within the period prescribed by the Statute of Limitations, for actions at law upon matters of account; or else, to assign some ground of exception or disability, within the

analogy of the Statute, to justify or excuse the delay; otherwise, it will be imputed to their own voluntary laches; and Courts of Equity are never active in lending their aid to stale and neglected claims; for the known maxim of such Courts is: "*Vigilantibus non dormientibus leges subveniunt.*" So, the bill was dismissed upon that ground.    In the bill before the Supreme Court of the United States, there were allegations of error in the accounts, and specification of errors and a prayer for surcharging and falsifying; here, there is nothing of this sort; it is to recover money which is due, if at all, upon open account.    Had the complainants sued at Law, they would have been barred by the statutory term of four years.    Aside from the Statute, upon the naked equity of their case, they are, in Chancery, barred by lapse of time; and it is upon this ground we plant our decision.    The suit is not *recenti facto;* the deed is nineteen years old; or if eleven only, that term, under the facts and circumstances of this case, we unhesitatingly say, would bar them.

In *Ray and others vs. Bogart and others,* the Supreme Court of New York dismissed a bill to open partnership accounts—the partnership having been dissolved, and the original parties dead—where the laches was for a term of eleven years.    The case went up to the Court of Errors, and the judgment of the Supreme Court *was affirmed;* Chancellor *Kent* dissenting.    2 *Johns. Cases,* 432.    See also, *Story's Eq.* §529.

In *Rayner vs. Pearsall,* a further account was refused, where the administrator of an executor, in his answer, set forth an account twelve years old, and averred that he had fully administered and distributed a trifling surplus.    3 *Johns. Ch. R.* 579.

In *Sturt vs. Mellish,* Lord *Hardwick* refused to send an account to a Master upon several grounds, saying among other things, that the plaintiff's acquiescence, from 1722 to 1736, (a period of fourteen years,) was a presumption of satisfaction.    2 *Atky.* 610.    See also, *Sherman vs. Sherman,* 2 *Vern.* 276.    *Travis vs. Waters,* 1 *J. Ch. R.* 48.    *Garner vs. Hall,* 3 *Har. & Johns.* 31. 6 *Johns. Ch. R.* 369.

Let the judgment of the Court below be affirmed.