GRAVES *et al.* v. DECATUR *et al.; et vice versa.*

Nos. 6533, 6534. JANUARY 18, 1929.

*Paul S. Etheridge* and *Alfred C. Broom,* for plaintiffs in error in main bill of exceptions.

*Troutman & Troutman, Branch & Howard, Bond Almand, Bryan & Middlebrooks,* and *John A. Dunaway,* contra.

HILL, J. (After stating the foregoing facts.) This case is making its *fourth* appearance in this tribunal. *Graves* v. *District Grand Lodge,* 155 *Ga.* 147 (116 S. E. 613) ; 161 *Ga.* 110 (129 S. E. 783). And see *Daniel* v. *Jones,* 146 *Ga.* 583 (supra), involving questions concerning this same District Grand Lodge. The record has increased in size with the years, since its first appearance in 1916, now containing, including the briefs, practically 1500 type-written pages. It has required much time and patience to examine

and consider this voluminous record, and yet we have examined it carefully, and believe we have reached the correct conclusion. Fortunately, counsel for plaintiffs in error in their brief say: "There are but two narrow points of law involved in these bills of exception. . . These two points are these: 1. Was the auditor correct in ruling that the amendment to the civil charter of the lodge corporation, striking paragraph six, thus separating the corporation from the order of Odd Fellows, valid and binding upon the intervenors, while admitting, and so finding as matter of fact, that said intervenors did not vote in favor of the same or consent to the same, while the same was only approved by a majority of 589 delegates, out of a membership in the corporation of 30,000 to 40,-000, at a convention held in 1917; and while the same was not submitted to the subcommittee of management, nor submitted to the local lodges of the order, as provided by the laws of the national and State bodies themselves, assuming that such private laws were applicable to such legislation at all? 2. Were the intervenors guilty of such laches as bar a recovery?" The facts stated in the cases cited above, together with those heretofore set out, will be sufficient for a clear understanding of the points decided. The case came before the court below on exceptions to the overruling of exceptions to the report of the auditor to whom the case had been referred. The record shows that Hattie Mae Decatur, one of the defendants in error, filed a petition in Fulton superior court, alleging that she was the beneficiary named in an endowment certificate issued by the District Grand Lodge No. 18 of the Grand United Order of Odd Fellows of Georgia, a corporation; that the corporation was indebted to the plaintiff in the sum of $500 named in the certificate; that the corporation was insolvent. She prayed for a receiver, etc. In 1925 George L. Bell was appointed permanent receiver of all the assets of the defendant. In September, 1926, A. Graves et al. (the Graves faction) filed an intervention in the above-stated cause, alleging as hereinbefore set out.

■ As only two points are insisted upon and argued in the brief of the plaintiffs in error, we will consider only those two points. Was the charter amendment granted on October 1, 1917, valid and binding? Paragraph 6 of the original charter, which was stricken by the amendment of October 1, 1917, was as follows: "The aforesaid corporation shall be governed and controlled by an executive

committee, which shall constitute a board of directors . . in accordance with the rules, by-laws and regulations enacted by the members of the corporation through their representatives in annual communication assembled." A new paragraph (6) was substituted therefor. The intervenors, A. Graves et al., or at least a portion of them, were present at the Macon convention, and the Graves faction was there represented. It appears from the report of the auditor, as a finding of fact, that when the resolution authorizing the amendment to the charter was offered not a dissenting vote was cast; that the Graves faction was present at the convention when the amendment was offered and adopted; and that there was no dissenting vote on the question. So far as the record discloses, therefore, the vote in favor of the amendment was unanimous. In 14 C. J. § 199, it is stated: "Stockholders or members of a corporation may be estopped by acts, acquiescence, or laches from denying the acceptance of an amendment or the validity thereof. Although there may have been a fundamental change wrought by an amendment to the charter or act of incorporation, such as might release a shareholder seasonably dissenting therefrom in the proper mode, yet unless he does so dissent and make a fair attempt to procure a rescission of his contract of subscription on that ground, or to prevent the corporation from acting in conformity with the amendment, he will become estopped from subsequently claiming that he has been released from his contract of subscription by reason of the amendment." In 1 Thompson on Corporations (3d ed.), § 410, the author states that "An acceptance was held to be sufficient where the resolution was passed without a dissenting vote, but the majority of the members present refused to vote." If the Graves faction, who were members or stockholders of the defendant corporation, were present at the Macon convention when the resolution to amend the charter of the defendant corporation was proposed, and they declined to vote, and the vote on the resolution was declared in favor of the adoption of the proposed amendment, they will not be heard later to complain that the vote was not passed by the requisite majority. They stood by in silence, and will be held to have acquiesced in the ruling of the presiding officer of the convention, to the effect that the amendment was adopted. The intervenors and those representing the Graves faction were present and participated in the proceedings of the convention at

Macon. Presumably they heard the resolution proposing the amendment to the charter read; and if they remained silent and refused to vote, and declined to express at the time any dissent from the action of the convention, they will not be heard, years later, to complain that the amendment was not legally passed by the requisite number of votes.

■ Are the intervenors, and the class represented by them, guilty of such laches in asserting their claims to the property in the hands of the receiver of the corporation as to prevent a recovery by them? In the auditor's finding of fact on this question he determined that the intervenors were not entitled to the relief prayed for, on account of their laches. The auditor found that since the year 1902 the corporation had carried on the purposes of the organization both as a fraternal association and as a business entity; that by the consent decree of August 3, 1917, the convention was to be held in Macon for the purpose of electing its officers and applying to the court for a restoration of the assets belonging to the corporation; that at this convention six of the intervenors were present; that on September 18, 1917, Hudson, one of the intervenors, together with a number of others, sought to enjoin the amendment to the charter, upon practically the same grounds now urged against the legality of the amendment; that an injunction was denied; that on December 27, 1917, a meeting of a number of lodges was held and a voluntary organization was effected, at which officers were elected, including A. Graves, who were recognized by the subcommittee of management; that since August 14, 1917, none of the intervenors had paid any money as dues or otherwise to the corporation; that after August 17, 1917, none of the intervenors made any claim or asserted any title to any of the assets of the defendant corporation; that no protest other than the effort to enjoin the charter amendment of 1917 had ever been made to the striking of paragraph 6 of the original charter; that subsequently to October 1, 1917, the defendant corporation had paid out death benefits, and this known to the intervenors; that since October, 1917, the corporation had dealt with its properties as its own, disposed of them, borrowed money; and that all these facts were known to the intervenors. Upon these facts the auditor found as a matter of law that the intervenors were barred from any relief, because of their laches.

This court has held that the approval or disapproval of exceptions of fact to an auditor's report in an equity case is in the discretion of the court; and that unless that discretion has been abused, it will not be interfered with by this court. *North Atlanta Land Co.* v. *Portness,* 138 *Ga.* 135 (74 S. E. 1000). See the following cases, where it was held that stockholders and others had waited an unreasonable time before bringing their complaints, and therefore had forfeited whatever equitable rights they may have had. *Winter* v. *Southern Securities Co.,* 155 *Ga.* 590 (118 S. E. 214); *Alexander* v. *Searcy,* 81 *Ga.* 536 (8 S. E. 630, 12 Am. St. R. 337); *Johnson* v. *Mercantile Trust Co.,* 94 *Ga.* 324 (21 S. E. 576); *Hollinshead* v. *Partridge,* 150 *Ga.* 521 (104 S. E. 206); *Holt* v. *Parsons,* 118 *Ga.* 895 (45 S. E. 690); *Akins* v. *Hill,* 7 *Ga.* 573. In the case last cited, Judge Nisbet, speaking for the court, said: "The peace of society requires that there shall be limits put to litigation. The justice and sense of civilized communities have ever favored limitation laws. There is no principle of equity sounder, more conservative, and more prolific in all the fruits of peace, than this: that he who slumbers over his rights, with no impediment to his asserting them, until the evidence upon which a counter-claim is founded may from lapse of time be presumed to be lost, until the generation cognizant of the transactions between the parties has passed away, and until original actors are in their graves and their affairs are left to representatives,—the law, in the exercise of an equitable sovereignty, *presumes it to be unjust* that under such circumstances a complainant should be heard; and in nine cases out of ten it is unjust in fact, as well as in theory. It is presumed, and the presumption grows out of the principles of human nature, developed in universal experience, that men will use reasonable diligence to get what rightfully belongs to them. Our observation of men teaches that they are more likely hurriedly to assert a false claim than tardily to assert an equitable one. If the claim be equitable, and an adverse claim is acquiesced in until the rights of third persons are involved, or until, from the obliterations of time, the proofs of the adverse claimant are lost, yet that equitable claim ought to yield to that general, social peace, upon which its exclusion is founded." In the instant case it seems that the Graves faction waited nine years before making any assertion of its rights; and, so far as the record discloses, there was nothing

to prevent them from asserting their rights, if any, at an earlier date. They waited until the receiver had practically liquidated all of the affairs of the corporation; and we are of the opinion that in equity and good conscience the auditor made a correct finding from the evidence on questions both of law and fact, and we reach the conclusion that the court below committed no error in disapproving the exceptions of law and fact to the auditor's report, and in making the report of the auditor the judgment of the court.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*