MAYOR &c. OF MONTEZUMA *et al. v.* BROWN *et al.*

No. 6439. February 13, 1929. Rehearing denied March 2, 1929.

4

*Jule Felton* and *Hooper & Hooper,* for plaintiffs in error.
*John R. L. & Joseph LeC. Smith* and *Jere M. Moore,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) We are of the opinion that the act of 1925 authorized the collection of the assessments specified in the executions. The purpose of that act, as stated in the caption, is as follows: "to authorize counties of Georgia to co-operate with municipalities in the paving and improvement of streets in such municipalities, to authorize the use of

county funds for the paving and improvement of streets of municipalities, to authorize the paving and improving of streets by counties and municipalities jointly by contract or otherwise, to authorize municipalities in such cases to assess part of the cost of paving or improvement against adjoining property, and for other purposes." It will be noted that the act seeks to do three things: (1) To authorize the use of county funds for improving streets in municipalities which form part of the State Highway System. (2) To authorize joint action by the counties and municipalities in paving the streets of municipalities, whether the joint paving be done by contract or otherwise. (3) To authorize municipalities, where the paving and improvement is done jointly, to assess part of the cost of such paving or improvement against adjoining property. We are of the opinion that the third division of the caption authorized the municipality by a general law of the State to assess the adjoining property on the street sought to be improved, in the manner in which such assessment was made in this case. The act of 1925 makes a new provision with reference to paving and improving the streets of small municipalities, different from any law in that respect previously in existence. At the time of the decision of this court in *Mayor &c. of Washington* v. *Faver,* 155 *Ga.* 680 (117 S. E. 653), there was no statutory law defining any terms on which work could be done by a county within the limits of an incorporated town. The county authorities were supposed to control the location, improvement, and upkeep of the roads of the county without the corporate limits of municipalities, and to have no concern with the streets of incorporated towns. Taxpayers of a county residing outside the municipal limits were not expected to bear any of the burden of maintaining streets of a city. The act of 1925 authorized the counties to use county funds for the paving and improving of streets of municipalities. There was no statute, prior to the act of 1925, which authorized a county or a city to jointly pave and improve the streets of the city. The act of 1925 authorized both of these changes in the prior legislation concerning highways. As appears from the statement of the third purpose of the act, municipalities were authorized, without regard to the nature of their charters at that time, not only to expend money for improvement as they had always been authorized to do, but to expend it jointly with the county either by contract or

otherwise, and "in such cases" to assess part of the cost of paving or improving against adjoining property.

It is true that this statement of the third purpose of the caption would be without force if no reference were made thereto in the act. Section 3 of the act provides: "The county authorities of any county shall be authorized to enter into a contract with any municipality of such county, for the construction and improvement of streets, street-pavement, or roads within such municipality which form a part of a county or State system of highways, at the joint expense of such county and municipality, with such division of the expense, and on such terms and conditions, as may be agreed on between the county and the municipality, the work, in such case, to be done either by the county or municipal forces, or by a contractor employed either by the county or municipality, or jointly by the county and municipality, as may be agreed on by the county and municipality. If the work is done by the county or municipal forces, or by a contractor employed by either the county or the municipality, the part of the cost to be paid by the other party to the agreement may be paid over in money to the party doing the work or employing the contractor. In any case where the streets or roads of a municipality are improved or paved under the provisions of this act, the municipality shall have and may exercise any power provided in its charter or ordinances or in the general laws of this State for the assessment of any part of the cost of the pavement or improvement against abutting and adjoining property and the owners thereof, and such assessment shall be equally as valid and binding as if the entire work were undertaken by the municipality alone. Where, by charter provisions, ordinances, or the general law of the State, the municipality is not authorized to assess the entire cost of paving or improvement against adjoining and abutting lands and the owners thereof, and it is provided that a portion of the expense shall be borne by the municipality, the proportion of the expense agreed to be paid by the county acting with the municipality under the terms of this act may be credited by the municipality to its part of the expense under the terms of its charter, ordinances, or the general law, and assessments against abutting and adjoining property and the owners thereof for the remainder of the whole costs of such pavement or other improvement shall be legal and binding; provided that no greater propor-

tion of the entire cost than is provided by charter, ordinances, or the general law of the State is assessed against such abutting or adjoining property and the owners thereof."

It is plain that the first two sentences of this section relate entirely to the second purpose named in the caption, which authorized the paving and improving of streets by counties and municipalities jointly "by contract or otherwise," and have no reference whatever to the third purpose stated in the caption, that of authorizing municipalities to assess. It is simply a provision confining the work to be done by the county on the streets of a town or city to such streets as form a part of county or State system of highways, authorizing either the county or the municipality to do the work and be paid by the other party for its share of the expense, and that either the municipality or the county may make the contract, in which event the party not making the contract shall be repaid by the other party for its share of the work. In this case we are concerned with the succeeding provisions of the act, that is, whether the City of Montezuma was thereby authorized to make assessments. In the first place, where the streets or roads of a municipality are improved or paved under the provisions of this act, it is declared that the municipality shall have and exercise any power provided in its charter or ordinances or the general law of the State. This is not a provision requiring that there shall be in the charter of the municipality any authority to assess, or that there shall be existing ordinances authorizing the city or town to assess; for it is expressly provided that in a case where the county and city are co-operating in accordance with the prior provisions of the act, the municipality shall have the right to exercise any needful power, whether it be found "in its charter or ordinances or in the general laws of the State." Conceding that a municipality in a given instance had no charter authority and no ordinance upon the subject, it is expressly permitted to fall back and rely upon any pertinent general law of the State upon the subject.

The last clause of the section is not clear in its language. It seeks to make express provision, in accordance with the caption, for cases where by charter provisions, ordinances, or the general law of the State the municipality is not authorized to assess. This endeavor was entirely useless, for the reason, as we have shown, that by the provision which authorized joint co-operation of the

county and city under the provisions of the act the municipality had already been authorized to exercise any power conferred in its charter or ordinances or arising under the general laws of the State, which of course included all municipalities, as it was intended to do, whether they had any charter provisions or ordinances on the subject of assessments or not, if there was a general law of the State which, reasonably construed, would include assessments among other means by which the proportionate share of abutting property-owners would be raised for the paving or improving of a street which was a part of a county or State system of highways. In saying that the municipality could exercise any power provided in its charter or ordinances or any general law of the State, the legislature was authorizing the municipality to exercise any power conferred by the general laws of the State, whether it had any right to assess by its charter or ordinances or not. This portion of the act gives to the municipality an option to proceed to exercise some special grant, if any, which had been specially conferred upon the municipality or to proceed under the terms of the general law as laid down in section 869. Though the language of the last clause of section 3 is of itself somewhat ambiguous, the ambiguity is removed when its verbiage is construed, as it should be, in connection with the caption clearly stating what the legislature intended, and illumined by the provision immediately preceding it in section 3, which gives all municipalities of the State the right, if they choose, of proceeding under the general laws of the State, without regard to the provisions of its charter or in the absence of any provision in its charter.

The effect of the passage of the act of 1925 was to write into every charter the provision that those municipalities which were allowed to take advantage of the county's willingness to expend its funds in the improvement of a street within the municipality should have the right to avail themselves of any municipal charter or ordinance or general law of the State which would enable them to co-operate with the county in the improvement of the street in question. The declaration that "In any case where the streets or roads of a municipality are improved or paved under the provisions of this act, the municipality shall have and may exercise any power provided in its charter or ordinances or in the general laws of the State for the assessment of any part of the cost of the pavement or

improvement against abutting and adjoining property and the owners thereof," makes clear the meaning of the conclusion of the act, and that it was not the intention of the General Assembly to annul and avoid the portion of the caption upon this subject. If the section had concluded with the language just quoted, it would have been complete and the intention of the legislature obvious. The conclusion of the section, which attempts, after having already made provision for all municipalities desiring to co-operate with counties in specified street improvement, to deal with a different subject, that is, the allocation of the expense agreed to be paid by the county by allowing it credited by the municipality to its part of the expense, and at the same time endeavoring to repeat what had already been said as to the right of the municipality to avail itself of its charter rights or the general laws of the State, causes the apparent confusion. After authorizing the city to credit the proportion of the expense to be paid by the county to the municipality's part of the expense and with no reference to the citizens or taxpayers, it proceeds to say: "assessments against abutting and adjoining property and the owners thereof for the remainder of the whole costs of such pavement or other improvement shall be legal and binding; provided that no greater proportion of the entire cost than is provided by charter, ordinances, or the general law of the State is assessed against such abutting or adjoining property and the owners thereof."

Certainly this provision does not withdraw the immediately preceding provision of section 3 or avoid it. The purpose of this portion of the section was to declare that the proportion paid by the county should go to the relief of the burdens of the municipality, and to prevent the adjoining property owners from deriving special benefits from the county's expenditure in excess of those received by other taxpayers of the municipality. That this is the intention is palpable. Furthermore, in the absence of this provision there might be doubt as to whether the city should credit the amount received from the county as a part of its share of the expense, or place it in the treasury and use it for other municipal purposes such as the ordinary expenses of government. In case it was devoted to the latter purpose, it would relieve the burden of the taxpayers and be a contribution to the abutting landowners as well as others. So it was specifically provided that whatever the county

paid was not to be devoted to the relief of the taxpayers, whether adjoining owners or not, but was to go to increase the city's power to pay its share of the improvement. In saying that the assessments against the abutting property should not be greater than is provided by "charter, ordinances, or the general law of the State," it was but repeating the verbiage of the preceding sentence which gave to the municipality the right to avail itself of the right of assessing by charter, or ordinances if it had them, or the general law of the State. As if to make this view of the matter more clear, it is manifest that the General Assembly, in applying to those municipalities which had no charter power or ordinances authorizing assessment the rule already laid down in other instances, intended to permit all municipalities which desired to co-operate with the county to have a means by which they could do so.

But it may be said, that, while the City of Montezuma under the general law as embodied in section 869, has the right to issue an execution and levy the same for the collection of a debt, there must be a debt before this power can be exercised, and that in the absence of proof of the existence of the debt the provision of section 869 would be without application. It appears that prior to the making of any contract for the paving and storm sewers in this case, the citizens of Montezuma affected by the paving of Dooly street, including (so far as appears from the record) the petitioners in the present case, were advised that the work was proposed to be done by the mayor and council just as it was in fact afterwards completed. No provision was made in the original estimates of the paving of Dooly Street for storm sewers or curbing. An engineer suggested to the municipal authorities that it would be a very grave mistake in the circumstances as to the topography and construction proposed to pave the street without providing certain curbing and storm sewerage to protect and preserve the improvement. Thereupon the mayor and council after notice by advertisement and handbills distributed to abutting property-owners on Dooly Street, held a meeting at which a large majority of the property owners on that street were present, and these urged the city council to do the work in accordance with the plan outlined by the engineer, and to construct street sewers and curbing. A written petition was placed at one of the stores in the city, so that residents along said street might be committed in writing to the

plan of action, and twenty-one residents, including three of the plaintiffs in the present case, signed the same. In this petition the signers asked that all work be done as it was done, and agreed to pay a larger estimate therefor than they are now called on to pay. Thereafter the city entered into the contract for the paving, curbing, and sewering, and the council passed an ordinance providing for the improvements in accordance with the specifications prepared by the engineer.

It was further provided in the ordinance that the city clerk publish, in a named newspaper published in said city, notice of the intention to pave said street, stating the estimate of the city's part of said work and the cost thereof; that any owner of property or any interested person, within ten days after the publication of the notice, could appeal to the mayor and council and contest the reasonableness of the proposed cost of the proposed improvement or the necessity therefor, or any other pertinent matter; and that, after the ascertainment of the part the city was required to pay under the contract, the finance committee should assess one third of the cost thereof upon the real estate abutting on said street in proportion to the foot frontage on said street. It does not appear that any of the petitioners or others took advantage of the opportunity for a hearing accorded by this ordinance. There is no dispute in the evidence as to the fact that the property of the abutting property owners was benefited, and that the construction of the pavement and its accessories was of a high class. None of the petitioners took any steps to prevent the accrual of these benefits. There was evidence that one of the petitioners had several hundred feet of earth hauled to his lot, and used it to raise the level thereof, thereby greatly enhancing the value of his property. Evidence was to the effect that the property of all of the petitioners enhanced greater than the assessment. None of the petitioners took any step to assert the rights upon which they now insist until the work had been completed and the contractors had complied with every detail of the improvement. Can the petitioners now come into a court of equity and ask that they be permitted to retain the benefits without contributing anything to the cost of a great improvement which inures to their benefit? Under the well-settled rule that the doors of a court of equity are closed in such instances as this, we think that the learned trial judge erred in continuing the restraining order.

In *Montgomery* v. *Atlanta,* 162 *Ga.* 534 (134 S. E. 152, 47 A. L. R. 233), it was held: "Equity requires every litigant who seeks her aid to do equity; and inasmuch as the construction company has expended large sums of money in making this street improvement, of which the city and the plaintiffs have received the benefit, equity will not interpose in behalf of the plaintiffs to annul and set aside the contract for such improvement and the assessment levied against them as owners of abutting property for their shares of the cost of such improvement, although such contract and assessment are illegal and invalid, unless the plaintiffs shall first do equity; and to do equity the plaintiffs must pay their proportionate shares of the cost of making such improvement, in the absence of actual fraud on the part of the construction company." Speaking for the court, Mr. Justice Hines said: "While we hold that the contract under which this pavement was laid, and the assessment levied for the payment of the costs of this improvement, are invalid and void, are the plaintiffs entitled to the relief sought under the facts of this case? They are in a court of equity. They are seeking affirmative equitable relief. They are seeking to have said contract and assessment declared illegal and void. . . They are seeking the writ of injunction. They thus ask for extraordinary equitable relief. 'He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit.' Civil Code (1910), § 4521. This principle is applicable where one in an equity suit seeks both equitable and legal relief. . . Many of the plaintiffs in this case petitioned to have this street improvement made, and all of them knew, or by the exercise of ordinary diligence could have known, of the existence of the facts which render this ordinance and contract invalid, and could have taken legal proceedings to prevent the performance of the contract and the expenditure of a large sum of money thereunder in making these improvements. In these circumstances it would be inequitable to permit them to enjoin the city and the construction company from enforcing the assessment levied upon their property for the purpose of paying for this improvement, and thus saddle upon the construction company the loss of a large sum expended by it in doing this work. Seeking equitable relief in the premises, they must do equity. They must pay for the benefits which they are receiving

from this improvement, before they can have the contract under which it was made and the assessment levied to defray the cost of the work declared null and void."

The same principle was announced in *City of Waycross* v. *Cowart,* 164 *Ga.* 721 (139 S. E. 521), where the insistence was urged that the assessments were illegal, and it was held that the "plaintiffs could not stand by and see the work of paving completed without objecting thereto, and acquire the benefits thereof, and then come into equity without doing or offering to do equity, which in the circumstances of the case would require them to pay or offer to pay the value of the work." In *Avery* v. *Atlanta,* 163 *Ga.* 591 (136 S. E. 789), it was held that when the owners of property affected by an improvement took no steps to enjoin the enforcement of the ordinance or assessments levied on their property until the improvement had been practically completed and a large sum had been expended in making the improvement in reliance upon such assessments to meet the expense, they would be precluded from attacking such assessments even upon the ground that the collection of the assessments would deprive them of their property in violation of the due-process clause of the State and Federal constitutions. In *Holt* v. *Parsons,* 118 *Ga.* 895 (45 S. E. 690), it was held that "A party is not entitled to an injunction when, with full knowledge of his rights, he has been guilty of delay and laches in asserting them, and has negligently suffered large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction." The principle underlying this feature of the case has sometimes been asserted to be that of estoppel, when in fact no estoppel has arisen, because estoppel can not arise except where the party sought to be estopped has said or done something to mislead the opposite party. Mere failure to assert a right does not always estop. In the present case it appears from the evidence that some of these parties are estopped, because their action misled the mayor and council and perhaps induced them to do the acts complained of when otherwise they might have acted to the contrary.

It is not necessary, however, for us to deal in this case with estoppel; for even where no estoppel has arisen and the opposite party has not been misled or defrauded to his injury, the principle that one who stands by and receives unquestioned benefits from a

public.improvement, without offering first to do equity by paying adequate compensation for the benefits he has received, is not entitled to equitable relief, is altogether different from that of estoppel, and all of these petitioners are affected thereby. The petitioners, seeing the amount of money being expended, conscious that their property would be greatly improved by this expenditure, whether opposed to the construction or unwilling to contribute to it, should have proceeded with dispatch to stop the construction. Since they have preferred to attempt to obtain the benefits of the improvements without paying therefor, they can not, upon equitable principles, be permitted to do so without first paying or tendering to pay for the benefit received. Without citing the decision in other States, it is enough to say that in *Draper* v. *Atlanta,* 126 *Ga.* 653 (55 S. E. 929) , *Burns* v. *Atlanta,* 148 *Ga.* 549 (97 S. E. 536) , *Board of Drainage Commissioners* v. *Arnold,* 156 *Ga.* 733 (120 S. E. 310) , *City of Bainbridge* v. *Jester,* 157 *Ga.* 505 (121 S. E. 798, 33 A. L. R. 1406) , *Raines* v. *Clay,* 161 *Ga.* 574, 578 (131 S. E. 499) , *Cochran* v. *Thomasville,* 167 *Ga.* 579 (146 S. E. 462) , as well as the *Montgomery, Avery,* and *Waycross* cases, supra, and others, the homely principle to which we have just referred is recognized as controlling where one has been benefited and is not willing to bear his share of the burden when he might have relieved himself therefrom by an earlier assertion of his right in a court of competent jurisdiction. From this viewpoint the grant of a judgment continuing the restraining order was error, regardless of the validity or invalidity of the ordinances of the city and whether the assessments and the levy were originally void, just as under similar circumstances the complainants in the *Avery* case, supra, were held not entitled to equitable relief even though the law under which the assessments were made in that case was violative of the constitutions of Georgia and of the United States.

*Judgment reversed. All the Justices concur.*