BASS *et al.* v. MAYOR etc. OF MILLEDGEVILLE *et al.*

No. 10113.   DECEMBER 17, 1934.
REHEARING DENIED JANUARY 26, FEBRUARY 20, 1935.

*Smith & Smith,* for plaintiffs.

*Edward R. Hines,* for City of Milledgeville.

*Spalding, MacDougald & Sibley* and *Sibley & Allen,* for Mac-Dougald Construction Company.

*George S. Carpenter, Marion Ennis, G. Lee Dickens, E. Pierce Wood,* and *Carlyle Giles,* for other parties.

RUSSELL, Chief Justice.   An equitable petition was filed by E. E. Bass and a large number of other petitioners against the Mayor and Aldermen of the City of Milledgeville, Thigpen, the city marshal, and the MacDougald Construction Company, a corporation of Fulton County.   The petitioners alleged that their property was about to be levied upon under executions issued by the clerk and treasurer of the city, by virtue of an act amending the charter of the city (Ga. L. 1925, pp. 1199 et seq.), to enforce payment of installments on sundry so-called bonds, none of which are now held or owned by the mayor and aldermen of the city.   Other parties intervened as plaintiffs, and others, holders of the bonds involved, were made parties defendant.   Petitioners pray that the enforcement of said executions be enjoined, and that an accounting be had to determine the amounts "which may in equity and good conscience" be due by petitioners on said bonds.   It is alleged that the act of 1925, authorizing the improvement of the streets of Milledgeville, is unconstitutional and void, for several reasons specifically stated, especially on account of the provision in the act that "said bonds shall not be or become a liability of the Mayor and Aldermen of the City of Milledgeville," in consequence of which the mayor and aldermen have no right or authority to collect any part of said bonds or assessments or to pay any part of said bonds, and the

clerk and treasurer of the city, in receiving payment of said bonds, does so at the direction of the holders of the bonds, and not as an officer or agent of the city, and therefore in issuing the executions the clerk is not acting for or on behalf of the city. It is alleged that about May, 1926, the mayor and aldermen appointed a committee to secure a petition of certain property owners to have the streets in front of their property paved, and "it immediately developed that there was substantial and violent opposition on behalf of the property owners to any paving program" under said amending act of 1925, supra. These property owners "strenuously urged that the cost of such paving would be far in excess of any possible benefit to their property, and in many instances would amount to practical confiscation. Said mayor and aldermen determined to carry through a paving program far in excess of what could be done with the proceeds of said bond issue and with the current funds of said city, and entered into a plan and conspiracy, in which said MacDougald Construction Company participated, and of which it had full knowledge, to pave said streets and assess the cost thereof against the abutting-property owners, against their wishes and over their protest. To that end they totally disregarded the requirements of said amending act, designed for the protection of said property owners, and to insure that their property should not be taken without due process of law." Also, that the mayor and aldermen failed to perform their duty to make a plat and keep it on file at all times, as required by the act of 1925, and failed to comply with the provision of said act that said mayor and aldermen should not make any revision of said plat pending any improvement project under the provisions of said act; that in furtherance of the conspiracy referred to the mayor and aldermen made no reference in any zoning ordinance, or any ordinance directing that the streets be improved, or any ordinance inviting bids, or any invitation to the public in the newspapers, or in the bids and contracts for said improvements, or any of the other proceedings prior to the making of the assessments, to the improvements being done. under said act, or to any intention to assess any part of the cost against abutting property and its owners.

Petitioners allege that the provision of the law which requires posting of all ordinances providing for any improvement was not complied with, and in the absence of compliance the mayor and

aldermen failed to acquire jurisdiction to assess the cost of said improvements against petitioners; that the city was without power to issue the executions, because the mayor and aldermen disregarded and violated the provisions of the act which require that all contracts entered under it must specify that payment is to be made solely by assessments against the abutting-land owners, but "at no time prior to the completion of said improvement had anything been done to which petitioners could have had any valid objection. All the proceedings and public records prior to the completion of the improvements and the making of the assessments showed on their face that said mayor and aldermen were making said improvements under the authority of the original charter, and not under the authority granted by said amending act, and that the same was being done upon the public credit of said city, and would be paid for out of the general public funds. To such action petitioners could have had no substantial objection, and no legal ground existed upon which they could have prevented the making of the improvements under said general power at the public expense." Also, "Petitioners further show that though they were not legally required to object to the private intention of said mayor and aldermen, which was not disclosed by their public records, they did strenuously object to said improvements, and put said mayor and aldermen on notice that they would stand on their legal rights and object to any assessment against them or their property. All of said facts were well known to said MacDougald Construction Company at and before the time it made said improvements, and said mayor and aldermen and said construction company were not in any way deceived or misled by any acts of petitioners or by their failure to act." Also, that the act of 1925 provided that all ordinances ordering any improvements should be passed under the rules providing for the passage of ordinances in said city, and that this provision was totally disregarded; and in pursuance of the aforesaid conspiracy none of the ordinances adopted were read three times, some of them were read only once, and many of them were not read at all. This fact being shown by the minutes of the mayor and aldermen, the clerk and treasurer, long after said paving was completed, and after litigation concerning the assessments had arisen, undertook to falsely and fraudulently alter the minutes in order to make the ordinances appear to have been legally adopted.

Other changes were made in said public records after the paving was completed and after the time within which petitioners could object had expired, so as to falsely show that the requirements of law had been complied with as to making these improvements; and this will appear from an inspection of the records themselves. It is charged that there were a number of other violations of the act of 1925; that no plat was made and kept on file, showing the amount of frontage of each and every abutting-property owner upon the correct street, that no final and conclusive assessment was made, no notice given of the amount proposed to be assessed against them respectively, and no opportunity to contest the correctness of said amount was given to petitioners as required by law; and this is taking petitioners' property without due process of law; that without authority of law petitioners were assessed an additional amount listed as discount on bonds; that the assessments were unequal, in that in zone 1 the paving was assessed at a uniform rate, though some of the streets therein were paved for a width of 36 feet, some 42 feet, some 50 feet, and some approximately 60 feet. Other instances of inequality in assessment are stated. Petitioners allege that said ordinances and paving contracts as of record appear to have been under the prior authority of said mayor and aldermen to pave said streets, and not under the authority of the amendment of 1925, and are therefore void under art. 7, sec. 7, par. 1, of the constitution of Georgia, as being an attempt to create a new debt without a two-thirds vote of the qualified voters. The entire amending act of 1925 is attacked on the ground that it is in conflict with the fourteenth amendment of the constitution of the United States, as well as with art. 1, sec. 1, par. 2, 3, and 23, of the constitution of Georgia. Reasons are alleged why, as applied to the allegations of the petition, the act of the General Assembly of 1925 is unconstitutional upon the grounds just stated. Numerous other attacks are made on the validity of the assessments; but it is unnecessary that these be recited, in the view which we take of the case.

The only exception is to the judgment dismissing the petition. It is unnecessary to consider the rulings of the trial judge upon any other question than that involved in the ruling on the demurrer; for whether he granted an injunction or refused it, in either case the judgment was rendered nugatory by the dismissal of the entire case. The original defendants, as well as the intervening bond-

holders, demurred upon the ground that petitioners' right of action was barred because of laches. There were numerous grounds of demurrer; but it is well settled that one ground may be sufficient to authorize dismissal on general demurrer; and if so, an inquiry into the merits of other grounds is unnecessary. The only question in this case is, do the allegations of the petition as amended, construing it most strongly against the pleader, show that the petitioners are guilty of such laches that a court of equity will refuse to intervene and afford them the relief for which they pray. It appears that much of this paving was done in 1926, and all of it was completed in 1928. The petition was filed on April 29, 1933; so there was no one of the petitioners who did not wait at least five years before taking any action such as that at length adopted. It appears that all of them owned property in the city, even if all of them are not residents of that city. Ordinarily even a non-resident owner must be presumed to have supervision of matters which may affect his property either injuriously or beneficially. This is the general rule of humanity, and exceptions to this policy are rare. It appears from the petition that the bonds issued under these assessments have been sold and bought, and the petition does not say whether the proportion of these bonds which have passed into the hands of innocent purchasers is large or small. Construing the petition most strongly against the pleader, and in view of the fact that it is not alleged that the amount sold is small and insignificant, it must be assumed that a considerable amount of money has been expended in the purchase of the bonds which are the subject of this litigation. No reason is shown why the petitioners delayed acting as they have, and it is not alleged that they did not earlier know of many of the defenses they now set up. It is inferable from their allegations that they saw the paving and improvements, and that they knew that the making of such improvements cost large sums of money, and that they knew that the city was going to issue bonds. They allege no affirmative act on the part of any of them to prevent the wrongs which they now claim to have been perpetrated. They allege that they knew that bonds were to be issued, and that they protested strongly against the issuance. The statement that they would not have had any objection if, as they believed, the bonds were to be issued upon the credit of the city and as an obligation against the entire property within the city limits,

is not an explanation of any value, because in the circumstances, by the exercise of reasonable diligence, they could have known the exact character of the bonds to be issued, or whether in fact bonds were going to be issued at all; and duty demanded that they should then object, instead of attempting to place upon the taxpayers of the city generally the cost of making the improvements which greatly enhanced the value of the property of petitioners.

As said in *Freeman* v. *Craver*, 56 *Ga.* 161, 164: "It is impossible to read the bill without being struck with the absence of explanation why the facts were not ascertained in due time. Reasonable diligence, we think, would have led to their discovery. Enough was known from the start to prompt inquiry." It is apparent from their allegations that petitioners knew that bonds were to be issued. They strenuously objected orally to the issuance of the bonds. They were charged with knowledge that the city could not issue bonds binding all the property of the municipality without submitting the issue to popular vote, unless there were sufficient municipal funds in the city treasury to pay for the improvements, or that such funds could be raised by taxation for the current year. Inquiry would have perhaps shown, even if it were not apparent from the nature and extent of the improvements going on, that it was highly improbable that there was enough surplus in the city treasury to pave even one entire block of the city's broad streets. *Leges vigilantibus non dormientibus subveniunt.* This old maxim, which interpreted into English means the laws will lend their assistance to the diligent and not to the sleepy, is embodied in the Civil Code (1910), § 4369, which declares that "courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." In fixing the time when the bar of laches may be interposed, the Code does not measure altogether by the lapse of time, because section 4536 declares that "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." In our opinion the controlling principle in this case has been decided in *Black* v. *Cohen*, 52 *Ga.* 621, 629-30; *Holt* v. *Parsons*, 118 *Ga.* 895 (45 S. E. 690); *City of Bainbridge* v. *Jester*, 157 *Ga.* 505 (121 S. E. 798); *Raines* v. *Clay*, 161 *Ga.* 574, 577 (131 S. E. 499); *Mayor &c. of Montezuma* v. *Brown*, 168 *Ga.* 1 (147 S. E. 80); *Bower* v. *Bain-*

*bridge,* 168 *Ga.* 616 (148 S. E. 517); *Farris* v. *Manchester,* 168 *Ga.* 653, 657 (149 S. E. 27). In *Avery* v. *Atlanta,* 163 *Ga.* 591 (136 S. E. 789), the court would not consider numerous defenses of the petitioners, it appearing that they took no steps to enjoin the city from making the improvements until nearly one year after the passage of the paving ordinance. In *Montgomery* v. *Atlanta,* 162 *Ga.* 534 (134 S. E. 152, 47 A. L. R. 233), Mr. Justice Hines said: "While we hold that the contract under which this pavement was laid, and the assessment levied for the payment of the costs of this improvement, are invalid and void, are the plaintiffs entitled to the relief sought under the facts of this case? They are in a court of equity. They are seeking affirmative equitable relief. They are seeking to have said contract and assessment declared illegal and void. . . They are seeking the writ of injunction. They thus ask for extraordinary equitable relief. 'He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit.' Civil Code (1910), § 4521. This principle is applicable where one in an equity suit seeks both equitable and legal relief. . . In these circumstances it would be inequitable to permit them to enjoin the city and the construction company from enforcing the assessment levied upon their property for the purpose of paying for this improvement, and thus saddle upon the construction company the loss of a large sum expended by it in doing this work."

In equity, jurisdictional ordinances are not essential. Equity proceeds upon the idea that one who stands by and receives benefits is bound to pay for them. No valid jurisdictional ordinance could ever be passed upon an unconstitutional statute; yet in cases similar to the one at bar this court has repeatedly refused to consider the unconstitutionality of statutes authorizing an assessment of the cost of street improvements against abutting owners, where the owners stood by and saw the improvements without raising these questions. *Avery* v. *Atlanta, Montezuma* v. *Brown,* and *Farris* v. *Manchester,* supra. Speaking of the doctrine of laches, which is in fact in equity what estoppel is in law, the Supreme Court of the United States, in Daniels *v.* Tearney, 102 U. S. 415, 420 (26 L. ed. 187), said: "The principle of estoppel, thus applied, has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It can not be made an instru-

ment of wrong or oppression, and it often gives triumph to right and justice, when nothing else known to our jurisprudence can, by its operation, secure those ends. Like the statute of limitations, it is a conservator, and without it society could not well go on." As far back as *Akins* v. *Hill*, 7 *Ga.* 573, Judge Nisbet stated the reason and necessity of time limitations in equity. What he said then was recently quoted and approved in *Graves* v. *Decatur*, 167 *Ga.* 678, 689 (146 S. E. 630) : "The peace of society requires that there should be limits put to litigation." The court did not err in sustaining the demurrer and in dismissing the petition.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*

ON MOTION FOR REHEARING.

RUSSELL, C. J. The petition in this case was held subject to general demurrer, because it appeared that the plaintiffs were barred by laches, and this applied to every attack made upon the validity of the assessments. It is insisted in the motion for rehearing that the plaintiffs could not be held barred, because they, or a large number of them, on the levies of fi. fas. filed affidavits of illegality based upon the assessments, and the present suit was instituted in part to consolidate the several cases made by the levies and the affidavits of illegality, and thus avoid a multiplicity of suits. This contention can not be sustained, for the reason that the petition fails to show what grounds of illegality were urged in any one of the affidavits of illegality, and hence it does not appear that any valid cause of complaint was alleged. The petition was not a suit to consolidate a number of cases at law, the grounds of which were in any manner disclosed; but every attack made upon the assessments in this equitable suit was urged as an independent ground, as fully and to the same extent as if no other proceeding had been instituted. The whole purpose of the petition, filed as an independent matter, was to enjoin the assessments from beginning to end, regardless of anything that may have been set up in the affidavits of illegality, the grounds of complaint being set forth with meticulous specification and without any word of reference to the previous litigation, except a general averment as to the pendency of a number of affidavits of illegality, with a prayer that such proceedings at law be consolidated and the whole controversy determined by the court of equity. As stated above, it does not appear

that any ground of attack in the equitable petition was contained in any one of the many affidavits of illegality. Nor does it appear from the petition upon what any one of the affidavits was based. A petition which seeks to consolidate actions at law ought to show what issues were made in these actions, and to demonstrate that some valid ground of complaint was contained therein, and also that at least some of the same questions were presented to the court in the equitable petition. A petition seeking consolidation of a number of cases for the purpose of adjudicating the issues raised in the original actions should show by its allegations what were the issues raised therein, and should not be filed as a mere substitution for the actions at law. The petition in this case was clearly brought as a substitution for the affidavits of illegality, the grounds of which were not in a single instance disclosed or even suggested; and in such case the pendency of the actions at law does not affect the issue of laches.

After a careful review of the several grounds presented by the motion for a rehearing, the court finds that the nature of the claim presented by one of the plaintiffs, Mrs. Alice Hendrickson, was overlooked in our prior investigation of the case, in the mass of questions presented by 116 other plaintiffs in error. In our consideration of the motion for rehearing it appears that the ground with relation to this plaintiff is meritorious, but it is not of such character as to require a reversal of the judgment. The point overlooked was that the claim asserted was of a year's support which had been allotted to the widow of one of the abutting-property owners against whom an assessment had been made. We are of the opinion that under the Civil Code (1910), § 4041, a year's support is superior to all liens for taxes, and that the widow would be entitled to her year's support. · But it is not necessary at this time to make any reference to that feature of the case, further than to say that nothing in our opinion can or will be held to deprive her from proceeding to enforce her rights in the year's support which, according to the allegations of her amendment, has already been set apart to her. This claim was asserted only by intervention; and since the petition did not state a cause of action in favor of the original plaintiffs, the dismissal of the case was not error as to this intervenor. *Atlanta & Carolina Ry. Co.* v. *Carolina Portland Cement Co.*, 140 *Ga.* 650 (2) (79 S. E. 555) ; *Smith* v. *Manning*, 155 *Ga.* 209 (4) (116 S. E. 813).

*Rehearing denied. All the Justices concur except Gilbert, J., disqualified.*